530 So.2d 1200 (1988)
STATE of Louisiana, Appellee,
v.
Essie Mae WALKER, Appellant.
No. 19678-KA.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1988.
Writ Denied November 11, 1988.
*1201 Jones & Johnson by Neal G. Johnson, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Monroe, John P. Spires, Asst. Dist. Atty., Bastrop, for appellee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this appeal of her conviction by jury verdict for attempted possession of cocaine and of her sentence, Essie Mae Walker argues that her motion to suppress should have been sustained and that in any event the conditions of probation imposed on her under a suspended sentence are constitutionally excessive. Assignments of error which were not argued or briefed are not considered.
We affirm.

*1202 FACTS
Responding to a request by narcotics officers made one year before to private parcel carriers, one private carrier informed the Morehouse Parish Sheriff's Office on September 26, 1985, that it had received from Detroit a package addressed to Mrs. Walker whom the officers suspected of being involved in major drug trafficking.
Within three hours a trained and "certified" canine "sniffed" and selected Mrs. Walker's package as containing marijuana, hashish, or cocaine from among several similarly wrapped dummy packages. A second test was conducted to "verify" the first test.
A narcotics deputy dressed in the uniform of the private carrier drove a delivery van of the private carrier to the address on the package, the residence of Mrs. Walker in Bastrop. There she accepted and signed for the package and was thereafter under surveillance. Within an hour, Mrs. Walker, carrying a paper sack, drove from her home in her car. She first went into a grocery store and then drove to a residence where she spoke to a male. Thereafter she drove to the parking lot of a cocktail lounge where she carried a paper sack out of her car and into an adjacent residential apartment. She returned to her car emptyhanded. The surveillants suspected that Mrs. Walker was making deliveries of narcotics and stopped her car after she left the apartment.
Mrs. Walker was informed that the officers were conducting a drug investigation and desired her consent to search her car. She agreed and then signed a consent form. She was given Miranda warnings and asked if she had received a package from the private carrier that morning by the officer who delivered the package to her. She denied receiving the package. The search of the car produced nothing incriminating.
The officers then followed Mrs. Walker to her home where they waited in the carport for another officer to return with a search warrant for her home. The officers saw that Mrs. Walker waited inside at her kitchen table on which sat the package that had been delivered to her. About the time, or shortly before the search warrant arrived about 4:15 p.m., one of the officers asked if she would allow the officers to enter her home. She agreed, stating that she wanted to "cooperate" with them and that the package was actually for her daughter, Glenda Henderson, who had told her that morning to expect delivery of and accept a package but instructed her not to open it. Mrs. Walker expected her daughter to come by later in the day to pick up the package.
One of the officers asked her to consent to opening the package, informing her that she could refuse to consent. She affirmatively consented to open the package. Her later statement to police confirmed the version of the officers that she agreed to open the package in the presence of the officers. The package contained a worn pair of tennis shoes and about seven ounces of cocaine in about 140 envelopes. Mrs. Walker was thereafter taken to the Sheriff's office about 6:30 p.m. There she was again advised of her Miranda rights and was questioned for about an hour. She first denied and then admitted that she had "wired" thousands of dollars on separate occasions to Detroit, the most recent occasion being two or three weeks earlier. She said she did so each time at her daughter's request and with money her daughter gave her to send. She repeatedly denied any knowledge of what the package contained.
After Mrs. Walker opened the package and before she was taken to the sheriff's office the narcotics officers awaited the appearance of Mrs. Walker's daughter, Ms. Henderson, who was also suspected of trafficking in drugs. The officers had been told that the package was actually for Ms. Henderson. Ms. Henderson came in the house about 5:45 p.m., but did not take the rewrapped package when she left a few minutes later.
Mrs. Walker and Ms. Henderson were separately billed with attempted possession of cocaine with intent to distribute and with conspiracy to possess cocaine with intent to distribute. This appeal concerns only Mrs. Walker's conviction by jury of the responsive *1203 verdict of attempted simple possession and her sentence.

THE MOTION TO SUPPRESS
Concluding that Mrs. Walker consented to opening the package in the presence of the officers and that her statement to the officers was properly predicated, the trial court denied Mrs. Walker's motion to suppress the cocaine and her statement.
Mrs. Walker asserts that the package should have been suppressed because it was unlawfully "seized" from the time the narcotics officers directed the private carrier to detain it for their "inspection." In a similar factual situation, the Supreme Court has held that the investigative detention and subjection of one's luggage to a canine sniff test in an airport is not a "search" prohibited by the Fourth Amendment. This type detention was held to be akin to the minimally intrusive detention allowed in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), where an officer has reasonable suspicion based on articulable facts and inferences that a person has been or is about to become engaged in criminal activity. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).
Moreover, the "controlled delivery" by police of a package containing contraband has been recognized to serve a useful function in law enforcement. Illinois v. Andreas, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). In U.S. v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), a 29-hour delay in delivery of a package by postal authorities was not fatal under the Fourth Amendment when the police reasonably suspected the package to contain contraband. Here the package was received by the private carrier in Monroe about 9:00 a.m. The sniff tests did not delay the scheduled delivery and the package was delivered "on time" in Bastrop about 2:15 p.m.
The officers knew from the sniff tests that the package to Mrs. Walker from Detroit probably contained either marijuana, hashish or cocaine. They knew from other sources that she had been sending large sums of money out of state. They saw her appear to make deliveries from her car soon after she received the package. Under these circumstances, the forcible stop of Mrs. Walker in her car after she made her third "stop" was not unconstitutionally flawed. Terry v. Ohio, supra. This afforded the officers reasonable suspicion to stop. The warrantless search of her car, although fruitless and not complained of, was based on her consent. See and compare U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), and State v. Belton, 441 So.2d 1195 (La.1983), U.S. cert. denied. Ross, supra, recognized that under some circumstances officers who stop a vehicle may have probable cause to conduct an immediate and warrantless search into containers in the trunk of that car.
An investigative stop is as complete a restriction on liberty of movement as an arrest but is a lesser and briefer intrusion. State v. Merchant, 490 So.2d 336 (La.App. 1st Cir.1986), writ denied. In assessing whether the detention of a citizen is too long to be justified as an investigative stop, the court must assess whether the police diligently pursued a means of investigation that was likely to quickly confirm or dispel the suspicions of the police. U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
When Mrs. Walker twice denied that she had received the package which had been delivered to her earlier in the day, one or more of the officers diligently sought to procure a search warrant. Other officers acted diligently in remaining outside Mrs. Walker's home where they kept the package under observation until she agreed to allow them inside her home and to open the package. Although Mrs. Walker ultimately consented to opening the package, procurement of a search warrant was the logical means of investigation that was likely to quickly confirm or dispel the officers' suspicions. The officers' effort to maintain the status quo during the interim was reasonable and diligent. Mrs. Walker's *1204 detention after the initial stop was minimal, necessary, and reasonable. U.S. v. Sharpe, supra.
Mrs. Walker further argues that her statement during her initial detention on the parking lot denying she had received the package was admitted at trial to show she was a liar. She also contends she was not given adequate Miranda warnings before she made this statement. CCrP Art. 218.1; LSA-Const. Art. 1, § 13.
Mrs. Walker quotes Officer Downs, who, in his testimony at the motion to suppress, did not mention that Mrs. Walker was told that an attorney would be appointed for the defendant if she could not afford one. Mrs. Walker overlooks, however, the testimony of Officer Bill Frank on this point:
Alright, what rights was she advised of?
Her right to remain silent, her right to an attorney, her right to an attorney if she couldn't afford one, her right touh that anything she said could be used against her in a court of law.
Contending that the sheriff's deputies improperly obtained her consent by overbearing her free will, Mrs. Walker asserts that the State bears the burden to prove that her consent to open the package was freely and voluntarily given. We and the State agree.
A search conducted pursuant to the subject's consent is an exception to both the warrant and the probable cause requirement. State v. Johnson, 380 So.2d 32 (La.1980); State v. Harris, 506 So.2d 1274 (La.App. 2d Cir.1987), writ denied. A consent to a search must be knowingly, voluntarily and intelligently given and not simply an acquiescence to a claim of authority. The State has the burden of proving this. State v. Ossey, 446 So.2d 280 (La.1984), U.S. cert. denied.
An oral consent to search is valid. Written consent is not required. State v. Ossey, supra. Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. The factual determination of the trial judge is entitled to great weight on review. State v. Temple, 343 So.2d 1024 (La.1977).
In the instant case, a review of the testimony and Mrs. Walker's own statement shows that her consent was knowing, voluntary and intelligent. The testimony of Deputy Downs shows not only Mrs. Walker's consent, but that she was told she did not have to comply with his request:
Did you in any way confirm that permission with Essie Walker?
Yes sir, I asked her would she be willing to cooperate. It was in her name and would she be willing to open the package and she [said], yes sir, I'll help y'all any way that I can.
Was she in any way advised of her rights about opening the package?
I told her she didn't have to. She didn't have to open it.
Deputy Frank added:
Was the search warrant presented to Mrs. Walker?
I don't believe so. Officer Downs asked her if she would [open] the package because the package was addressed to her and she said she would. She opened the package at his request.
Was she advised as to her rights to not open the package?
Yes sir.
Who advised her of this?
Officer Downs. Told her she did not have to, but he asked her if she would.
Other than telling her that she didn't have to, but asking her if she would, was anything said to her, uh, threatening in any way?
No sir. In fact, she was very cooperative. She said she would open the package, but she didn't know what was in it and she didn't have any idea. All she knew was that she had received a package addressed to her. She didn't know what was in it. She was told to accept the package and not to open it.
At any time until she opened that package was any pressure brought on her by you or anyone else?
Not to my knowledge; not in my presence.

*1205 Was she spoken to in harsh terms or a loud voice?
No sir.
Did Officer Downs phrase this request as a request or was it more of an order?
In my opinion it was a request. He asked her if she would open the package. The package is addressed to you, Miss Walker, would you mind opening it for us and let us see what's in it and she consented to do that.
The words that you just used are to the best of your recollection of actual words used by Officer Downs?
I wouldn't say it was a direct quote, but it was very close.
After she opened the package, Mrs. Walker stated to the deputies at the sheriff's office:
Now when Mr. Downs got there did he not ask you if it was okay for us to come in?
Yes.
Okay, you allowed us to come in and that's when we asked you to open the package because the package was addressed to you, is that correct?
Yes, yes sir.
And you opened the package, is that right?
Yes, yes.
And when you opened the package that's when you found the shoes and the package with little packages in there, you don't know what was in it but there was a bunch of little packages in there?
No, because I don't even know, I didn't even look in them.
Okay?
Y'all had them.
And we had your absolute permission to come in your [house] at that time, when we came in, is that right?
Yes sir.
Mrs. Walker's contention that she allowed the officers inside and opened the package because she knew they had a search warrant is answered by her own testimony on the motion to suppress:
Alright. When did they come into your house?
They came into my house when Mr.... this other man [Officer Downs] come back, they ... all of them came in the house.
Did they ever show you a search warrant?
No sir, never saw it.
. . . . .
Did they ask you if it was alright for them to come into the house?
They asked me that.
And what did you tell them?
I say, "You can come on."
. . . . .
When he [Officer Downs] came back, did he have a paper or document of some sort in his hand?
Uh uh (negative) he didn't show me nothing.
Did he tell you that he had a search warrant?
No sir, he didn't tell me nothing.
The trial court denied the motion to suppress the package with these comments:
The Court finds that Mrs. Walker's consent was freely and voluntarily given. Anything to the contrary, appears for the first time in her testimony given in open court during the hearing of these motions [and] cannot stand, when tested against her answers given during her recorded statement to the police, which taken together with the testimony of Officers Downs and Franks, that she was asked to open the package and nothing more, leaves nothing to suggest that she did not consent to open the package.
The record supports the conclusion that Mrs. Walker consented to the search, freely, voluntarily, and intelligently. While she may have been nervous and perhaps frightened, her will was not overborne and her consent was freely given.

THE SENTENCE ASSIGNMENT
The test for excessiveness of a sentence is two-pronged. First, the record must show that the trial court sentenced under the guidelines of CCrP Art. 894.1. The trial court is not required to mechanically *1206 recite each aggravating and mitigating circumstance, but the record must reflect facts that indicate that the guidelines of the article were considered. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of CCrP Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record shows an adequate factual basis for the sentence imposed, remand is not necessary even where the court has not expressly discussed each of the several factors in Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important factors which a court must consider are defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981).
The second prong of the test requires the reviewing court to determine whether the sentence imposed is too severe in the light of the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or is purposelessly and needlessly imposed. State v. Bonanno, 384 So.2d 355 (La.1980).
When the criminal conduct and the punishment, compared in light of the harm done to society, are so disproportionate it shocks one's sense of justice, the sentence will be held excessive. State v. Bonanno, supra. The trial judge has wide discretion to impose a sentence within the statutory limits. A sentence is not set aside as excessive unless a manifest abuse of discretion is articulated. State v. Square, 433 So.2d 104 (La.1983).
A trial court is not required to suspend a sentence or grant probation for every first felony offense. The best interests of the public and the first felony offender must be weighed in light of the criminal conduct. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984).
Mrs. Walker faced up to 2½ years at hard labor and $2,500 as a fine. LRS 40:967 C(2); 14:27 D(3). She was sentenced to 2½ years imprisonment at hard labor and a fine of $2,000. Hard labor imprisonment was suspended and she was placed on supervised probation for a period of five years under the condition that she serve one year in the parish jail and that she pay all the costs of court and in default thereof, serve 30 days in jail. The fine was made payable six months after her release from jail.
The court, with benefit of a PSI, considered Mrs. Walker's age, 58, her marital status, her family situation, including the fact that she had children living in Detroit, and the conviction. The trial court recognized her as a first offender and mentioned generally that some of the guidelines of Art. 894.1 worked in her favor and some did not.
The court found on the one hand that it was unlikely that Mrs. Walker would commit another crime during a period of probation or a suspended sentence. On the other hand, the court found the offense to be serious because it involved a large quantity of cocaine, a drug whose destructive effects have claimed or ruined many lives. By suspending the 2½ year hard labor sentence but imposing one year of jail time as a condition of probation, the court particularized the sentence to the offender and the offense as required by Art. 894.1. We find no abuse of discretion or constitutional infirmity in the sentence. The punishment imposed was not the maximum to which she was exposed and is not excessive.

DECREE
Defendant's conviction and sentence are AFFIRMED.