715 So.2d 745 (1998)
STATE of Louisiana, Plaintiff,
v.
Roderick PRESIDENT, Defendant-Appellant.
No. 97-1593.
Court of Appeal of Louisiana, Third Circuit.
July 15, 1998.
*746 William E. Tilley, Leesville, for State.
Tony Clell Tillman, Leesville, for Roderick President.
Roderick President, pro se.
*747 Before YELVERTON, GREMILLION and PICKETT, JJ.
GREMILLION, Judge.
The defendant, Roderick President, was charged by amended bill of information with one count of distribution of a controlled dangerous substance, one count of possession of a controlled dangerous substance (marijuana) with intent to distribute, both in violation of La.R.S. 40:966 A(1), together with two counts of possession of a firearm by a convicted felon, both in violation of La.R.S. 14:95.1.
Defendant filed a motion to suppress evidence, arguing his purported consent to search certain items was vitiated as it was obtained "fraudulently and by coercion, intimidation, and promises." The motion was denied by the trial court. Subsequently, Defendant was tried and found guilty of two counts of possession of marijuana and two counts of illegal possession of a firearm by a felon.
Thereafter, Defendant filed a pro se motion in arrest of judgment and an amended version of the same motion, contending that the Texas convictions used as predicates for his two convictions under La.R.S. 14:95.1 were improperly admitted and insufficiently demonstrated to be analogous to any of the statutorily-delineated crimes in that statute. The trial court denied the motion, and subsequently sentenced Defendant to serve six months on each count of possession of marijuana, to run concurrently, and ten years at hard labor and a $1,000.00 fine, plus court costs, on the first count of felon in possession of a firearm. That sentence was to run concurrently with the sentences for possession of marijuana. Defendant was also sentenced to twelve years at hard labor and a $1,000.00 fine, plus court costs, on the other count of felon in possession of a firearm, to run consecutively with the other count of felon in possession of a firearm but concurrently with the sentences for possession of marijuana. The sentences on the latter two counts are without benefit of parole, probation, or suspension of sentence.
Defendant now timely appeals his convictions to this court.

FACTS
On July 23, 1995, Defendant went to the residence of his girlfriend, Rachel Hickman, in an attempt to get her to go to Texas with him. He argued with her mother, Sue Hickman, over whether Rachel would accompany him. Sue testified that Defendant armed himself with a .22 caliber rifle which he waved around as he ordered Rachel "to run and get in the car."
After leaving for a short period of time, Defendant returned with Rachel and told her to get her clothes so she could go with him to Texas. Defendant was armed with the same rifle. During this episode, the police were called. At some point before the police arrived, Defendant leaned the rifle against a tree in Sue's yard. Lt. Jack Landrum of the Leesville Police Department responded to the call. He later testified that he was responding to a call concerning a disturbance involving a gun. Upon his arrival, Lt. Landrum did not see a weapon on Defendant. However, the crowd indicated that Defendant had a gun. Lt. Landrum drew his weapon, pointed it at Defendant, and ordered him to lie "prone on the ground." Defendant refused to comply. According to Lt. Landrum, he soon noticed the rifle leaning against the tree. He testified that not only did Defendant refuse to comply with his orders to lie on the ground, he also began moving toward the rifle. When Defendant subsequently made threatening gestures, Lt. Landrum subdued him by administering pepper spray to his face. Defendant was ultimately hand-cuffed, placed in a police car, and transported to the Leesville Police Station.
After the arrest, Rachel told Lt. Landrum and other Leesville police officers that there was marijuana under the dash in the vehicle that Defendant was driving. Based on that information, Sgt. Michael Gore of the Leesville Police Department confronted Defendant at the Leesville Police Station where he obtained permission to search the car from Defendant. A search of the vehicle under the dashboard, "closer to the passenger's side," produced a quantity of marijuana packaged in several individual plastic bags (including one hand-rolled cigarette) wrapped *748 together in a larger one and then wrapped again in a brown paper sack.
After the July 23, 1995 incident, Rachel told police that Defendant sold marijuana to Clint Charles Johnson on that same day. That allegation resulted in the distribution charge against Defendant. The only evidence of this offense offered at trial was Rachel's testimony that she saw the sale. She recanted that testimony under cross-examination.
On January 6, 1996, Defendant was stopped by Sgt. Tommy Bolton of the Leesville Police Department for running a stop sign. Sgt. Bolton noticed a shotgun on the passenger-side seat partially obscured by a blanket upon which Defendant's three-year-old son was sitting. Sgt. Bolton took possession of the shotgun and determined that it was loaded. After securing the weapon and checking to see if it was stolen, he seized the weapon and issued citations for running a stop sign, failure to have a driver's license, and failure to have proof of registration. Defendant was required to follow the police to the station where further inquiries were made concerning the vehicle. No arrest was made on the charge of possession of a firearm by a convicted felon until September 8, 1996.

SUFFICIENCY OF EVIDENCE
State v. Hearold, 603 So.2d 731 (La.1992), held that when issues are raised on appeal relating to the sufficiency of the evidence and other trial errors, the reviewing court should first determine sufficiency. See also Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). Accordingly, we will address whether the evidence used to convict Defendant was sufficient to prove beyond a reasonable doubt each element of the crimes he was convicted of, reserving for later discussion specific evidentiary matters raised by Defendant.
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), states that in order to affirm a conviction, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational fact finder to conclude that every element of the crime was proven beyond a reasonable doubt. See State v. Quatrevingt, 93-1644 (La.2/28/96); 670 So.2d 197, cert. denied, ___ U.S. ___, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996); State v. Maxie, 93-2158 (La.4/10/95); 653 So.2d 526. In a case involving circumstantial evidence, assuming every fact to be proved that the evidence tends to prove, the evidence must exclude every reasonable hypothesis of innocence. La.R.S. 15:438; Quatrevingt, 670 So.2d at 200; State v. Jack, 97-351 (La.App. 3 Cir. 10/8/97); 700 So.2d 1177. This does not mean, however, that every possibility of innocence must be excluded. Maxie, 653 So.2d 526; State v. Lilly, 468 So.2d 1154 (La.1985).

Possession of Marijuana with Intent to Distribute

(The alleged sale to Clint Charles Johnson)
Defendant contends he was convicted of this count based solely on the testimony of Rachel. He argues that the use of her testimony cannot sustain the Jackson burden of proof as her testimony is internally contradictory. We agree.
It is noted that the jury convicted Defendant of the responsive verdict of possession of marijuana. Defendant asserts the verdict was a "compromise verdict" not based on the evidence. In State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the supreme court held that compromise verdicts are permissible, whether or not the evidence supports the compromise verdict, as long as the verdict comports with the legislative scheme in La.Code Crim.P. art. 814 and the evidence is sufficient to sustain a conviction on the charged offense. Defendant's claim thus centers on the sufficiency of the original charge based on Rachel's testimony.
Initially, Rachel testified that she saw marijuana in a vehicle she claimed was Defendant's and was being driven by Defendant on July 23, 1995 when he picked her up and they, along with some companions, drove to Texas and then back to Leesville. She *749 said that she became aware of this marijuana and its location because Defendant sold some of it to Johnson. We note that Rachel gave differing accounts of the events transpiring on the day in question. Her testimony was inconsistent, and she eventually testified under cross-examination that she did not know if Defendant actually sold marijuana to Johnson. Moreover, Rachel was a reluctant witness, especially when questioned by the defense, and appeared to misapprehend the questions and seemingly possessed minimal intellectual comprehension. For example, she did not know the year in which she was born nor the address of her home. Finally, she did not inform officers of this alleged transaction between Johnson and Defendant until after July 23, 1995. We also note that Johnson, a convicted felony-drug offender, testified on behalf of Defendant and stated unequivocally that he never purchased or received marijuana from Defendant, although he claims he was smoking marijuana cigarettes on the day in question for medical reasons.
According to State v. Jeansonne, 580 So.2d 1010 (La.App. 3 Cir.), writ denied, 584 So.2d 1170 (La.1991), the trier of fact may accept or reject, in whole or in part, any portion of a witness's testimony. See also State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); 663 So.2d 309, writ denied, 96-0681 (La.5/16/97); 693 So.2d 793. Thus, a rational trier of fact might conclude that parts of Rachel's testimony are true, while others are less credible. The testimony of one witness, if believed by the trier of fact, is sufficient to support the requisite factual conclusion in the absence of internal contradictions or irreconcilable conflict with the physical evidence. Id.
After a careful review of Rachel's testimony, we find that it is simply too riddled with internal contradictions and inconsistencies to support a reasonable and rational factual conclusion that Defendant sold drugs to Johnson. Accordingly, we reverse Defendant's conviction for possession of marijuana under count one.

Possession of Marijuana (found under glove compartment)
Defendant also contends the evidence was insufficient to show the marijuana obtained underneath the glove compartment of the blue Buick alleged to have been driven by him was ever actually possessed by him. The record indicates the vehicle was not registered to him, but to Cedric Green. Defendant alleges Rachel's testimony was the basis for his conviction on this count, and that it is too inconsistent to provide a sufficient basis for his conviction. We reject his argument on this issue as the record contains evidence of his exercise of dominion and control of the marijuana in question, either actually or constructively. Although Rachel's testimony was inconsistent, the trier of fact may have credited it, along with the testimony of the officers, with establishing Defendant's actual or constructive possession of the marijuana at issue in count two. As discussed above, Jeansonne and Henry allow the trier of fact to accept or reject, in whole or in part, any portion of a witness' testimony. Moreover, even one witness' testimony can be sufficient to sustain a conviction under Jackson. Id.
Defendant argues that no testimony was introduced that showed he ever possessed the vehicle in which the drugs were ultimately found. This argument has no merit as there is substantial evidence that Defendant was using this vehicle on the day in question. For a conviction of possession of marijuana, actual possession need not be found; instead, Defendant could be found guilty of constructive possession. See State v. King, 554 So.2d 254 (La.App. 3 Cir.1989).
To prove constructive possession, the State must show that the substance was within the defendant's dominion and control or in his joint possession. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971); State v. Williams, 546 So.2d 963 (La.App. 3 Cir. 1989); see also State v. Harvey, 463 So.2d 706 (La.App. 4 Cir.1985); State v. Newberry, 560 So.2d 121 (La.App. 3 Cir.1990). Several factors may be considered when determining dominion and control:

*750 [D]efendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person found to be in actual possession; the defendant's access to the area where the drugs were found; the evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the particular area was frequented by drug users.
State v. Franklin, 96-1346, p. 5 (La.App. 3 Cir. 4/16/97); 693 So.2d 219, 222, citing Bujol v. Cain, 713 F.2d 112 (5 Cir.1983); see also State v. Tasker, 448 So.2d 1311, 1314 (La. App. 1 Cir.), writ denied, 450 So.2d 644 (La.1984).
Not only was the marijuana found where Rachel said it would be, but the evidence also indicates that a telephone conversation of Defendant was overheard by a dispatcher at the police station in which Defendant tipped officers to his knowledge of the existence of drugs in the vehicle. According to law enforcement personnel at the police station, Defendant, while talking on the telephone, asked Officer Michael Gore about the results of the vehicle's search to which the officer responded that the marijuana had been found. Officer Gore and police dispatcher Faye Fontenot testified that they overheard Defendant then state to the person with whom he had been conversing, "[W]ell, they found my dope so I guess that will be another charge."
Guilty knowledge is an essential element in proving constructive possession and may be inferred from the circumstances. State v. Converse, 529 So.2d 459 (La.App. 1 Cir.), writ denied, 533 So.2d 355 (La.1988); State v. Jones, 551 So.2d 18 (La.App. 4 Cir. 1989). Defendant's statement was an admission that, if believed by the trier of fact, established guilty knowledge of the marijuana. We note that the witnesses testified that Defendant stated "my" marijuana and adhered to that possessive pronoun and not the adjective "some" as Defendant suggested when the witnesses were subjected to cross-examination. We find that the evidence obtained to convict Defendant on count two of the bill is sufficient in light of the Jackson standard based on the credibility determinations made by the fact finder. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983). This portion of Defendant's assignment of error has no merit.

THE UNDERLYING CONVICTIONS
Defendant contends in this assignment of error that the trial court erred in using the Texas convictions as the underlying convictions for the purposes of La. R.S. 14:95.1. Under La.R.S. 14:95.1, the State is also required to prove Defendant was convicted of one of the enumerated felonies listed in the statute within the ten-year statutory period. State v. Recard, 97-754 (La.App. 3 Cir. 11/26/97); 704 So.2d 324. Included in the enumerated felonies is the crime of burglary of an inhabited dwelling, as well as a crime of violence as defined by La.R.S. 14:2(13) which is a felony. La.R.S. 14:95.1. A crime of violence under La.R.S. 14:2(13) is an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, and that involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense, or is an offense that involves the possession or use of a dangerous weapon. According to Tara Fleming, a senior district parole officer located in Houston, Defendant was convicted in the State of Texas of burglary of a habitation with intent to commit aggravated assault and two counts of aggravated assault. Fleming testified that burglary of a habitation is "when you go into a residence without that person's approval or consent and at that time destroy property or take property from that residence." She further testified that aggravated assault is a crime of violence that is "an offense where a person has committed against another person by hitting, using some type of weapon causing bodily injury, severe bodily injury."
According to Fleming, Defendant's "penitentiary packet," which was certified by the record clerk of the Texas Department of Criminal Justice, included his date of conviction. The penitentiary packet indicated he was convicted in the 180th District Court in Harris County, Texas, in August 1992, of two counts of aggravated assault and one count of *751 burglary of a habitation with intent to commit an aggravated assault. The bill of information in the case at hand states that Defendant was charged with violating La.R.S. 14:95.1, utilizing the underlying Texas predicate for a violation of Texas R.S. 30:02, in case number 621,774, conviction occurring on or about August 31, 1992.
Thus, the date of conviction establishes that Defendant is within the statutorily provided limitation of prosecution of La.R.S. 14:95.1. According to Recard, the only remaining question is whether these offenses would be one of the enumerated crimes set forth in La.R.S. 14:95.1. Although the State did not provide the elements of the Texas offense it sought to use as a predicate offense, the bill of information and other evidence admitted indicate the predicate offense used was a conviction of Tex.Penal 30.02. La.R.S. 15:424 provides: "The published statutes and digests of the other states and territories shall be prima facie evidence of the statute laws of the state or territory from which they purport to emanate, without being filed in evidence."
In State v. Kennerson, 96-1518, p. 16 (La. App. 3 Cir. 5/7/97); 695 So.2d 1367, 1378, we held the following regarding recognition of another state's laws:
First, although La.R.S. 15:424 provides that published law of other states is prima facie evidence of the law of that state, without the necessity of introducing it into evidence, the State should, at a minimum, cite the pertinent statute for the record.
As indicated, the State cited the pertinent statute in the bill of information, and the evidence proves that Defendant was convicted of burglary of a habitation with intent to commit an aggravated assault therein. Our research reveals that section 30.02 of the Texas Penal Code contains all the elements of Louisiana's La.R.S. 14:62.3 (Unauthorized Entry of an Inhabited Dwelling), a crime listed in La.R.S. 14:95.1.
Accordingly, the State carried its burden of proving beyond a reasonable doubt that Defendant possessed a firearm on July 23, 1995, after having committed a crime set forth in La.R.S. 14:95.1 and within the ten-year statutory period set forth in the statute. Therefore, this assignment of error lacks merit.

DOUBLE JEOPARDY
In this assignment of error, Defendant contends that the use of the same predicate offense for both convictions of La.R.S. 14:95.1 is a violation of double jeopardy principles. Specifically, Defendant claims that trying him with the same predicate offense offends the "same elements/distinct fact" test of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as construed in State v. Doughty, 379 So.2d 1088 (La.1980). This test states that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one, is whether each provision requires proof of an additional fact which the other does not. Id. Defendant's reliance on Doughty is misplaced. The use of the same predicate offense to charge and convict Defendant of two different violations of La.R.S. 14:95.1 does not offend the traditional Louisiana double jeopardy analysis utilizing the "same elements/distinct facts" test or Louisiana's more expansive "same evidence" test discussed in Doughty. The predicate offense simply creates a status. The supreme court in State v. Amos, 343 So.2d 166, 168 (La.1977), found the policy reason and purpose for enactment of La.R.S. 14:95.1 "is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity." In State v. Davis, 499 So.2d 1311, 1313-14 (La.App. 4 Cir.1986), the court held:
By contrast, LSA-R.S. 14:95.1 does not impose a greater penalty for a crime which has already been committed. Rather, LSA-R.S. 14:95.1 prohibits specified future conduct, the carrying of a concealed weapon by a convicted felon, and sets forth penalties to be expected if such conduct occurs. State v. Williams, [358 So.2d 943 (La.1978)] supra at 946. Although triggered by the defendant's status as a convicted felon, LSA-R.S. 14:95.1 creates an *752 entirely new felony offense mandating a unique penalty structure.
Being clothed with the status of a felony offender as provided in La. R.S. 14:95.1, Defendant committed two separate crimes on separate days by possessing different firearms each day. Convictions for each crime does not constitute double jeopardy.
Defendant also cites State v. Horton, 487 So.2d 602 (La.App. 4 Cir.1986), for the principle that proof of prior convictions in enhancement proceedings cannot be used more than once for enhancement purposes. Again, Defendant's reliance on this principle of law is misplaced. We note that the State cannot support a habitual offender bill of information under La.R.S. 15:529.1 against a person who is convicted under the firearm statute by using the same felony conviction that supported the La.R.S. 14:95.1 offense in the bill of information. State v. Sanders, 337 So.2d 1131 (La.1976); State v. Moten, 619 So.2d 683 (La.App. 4 Cir.1993). However, the instant case does not involve enhancement under La.R.S. 15:529.1. Therefore, this argument as well as this assignment of error has no merit.

MOTION TO SUPPRESS
By this assignment, Defendant claims that the trial court erred in failing to grant his motion to suppress the marijuana seized pursuant to the warrantless search of the automobile on July 23, 1995. The State contends the search was consensual and, therefore, did not require a warrant.
A search made pursuant to consent places the burden of proving its voluntariness on the State. State v. Reynaga, 93-1520 (La.App. 3 Cir. 10/5/94); 643 So.2d 431; State v. Valrie, 597 So.2d 1218 (La.App. 3 Cir.), writ denied, 605 So.2d 1113 (La. 1992). Defendant argues the State has failed to demonstrate that he voluntarily and freely gave permission to Officer Gore and his colleagues to search the vehicle. He also argues that he was coerced in that the officers made promises of aid to induce him to consent to a search of a vehicle that did not even belong to him. Accordingly, we will review the totality of the circumstances surrounding the consent in order to determine whether it was freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
At the suppression hearing, three officers testified as to the voluntariness of the oral and written consent given by Defendant. These officers unequivocally denied Defendant's assertions that promises were made relative to helping Defendant on some of the charges that may arise. The evidence indicates Defendant refused to sign the consent form initially unless officers promised to help him, but Officer Gore specifically informed Defendant he could not aid him in any manner. Officer Gore stated Defendant's change of heart occurred after the passage of a few minutes when he asked if he could call someone to have the car picked up. Officer Gore testified that he told Defendant that he was holding the vehicle while preparing an application for a search warrant. According to Officer Gore, it was at this time that Defendant suggested he may be amenable to granting his consent to search.
On the other hand, Defendant contends he could not have granted permission to search the vehicle in question since it was not his, and the officers should have conducted a records check to determine the owner and contacted that individual. We reject this contention. In the absence of evidence as to the ownership of a vehicle, the operator of a vehicle has authority to consent to a search thereof. State v. Rawls, 552 So.2d 764 (La.App. 1 Cir.1989). See also State v. White, 512 So.2d 590 (La.App. 3 Cir.1987).
In the instant matter, there was no showing of bad faith on the part of the officers. Further, considering the totality of the circumstances, it was reasonable for the officers to believe Defendant exercised dominion and control over the vehicle. Indeed, by Defendant's own admissions, he actually conducted a "carrot and stick" routine by offering consent in lieu of dropping charges as opposed to his assertions that the officers held higher charges over his head in lieu of consent.
Defendant also contends the absence of evidence shown by the State that the officers had actually "begun the process" *753 of working on a search warrant application, as they informed him, should militate against a valid consensual search. Basically, Defendant claims that the State had no probable cause to obtain a warrant under the circumstances, that they used the threat of obtaining a search warrant to force his consent, and that since the trial court never actually determined whether adequate information existed for which a search warrant could have been issued, his consent should have been vitiated. Again, we reject his argument and refuse to reach the issue of whether adequate probable cause existed because a consensual search is an exception to both the warrant and probable cause requirements. State v. Raheem, 464 So.2d 293 (La.1985); State v. Crews, 28,153 (La.App. 2 Cir. 5/8/96); 674 So.2d 1082; State v. Haygood, 26,102 (La.App. 2 Cir. 8/17/94); 641 So.2d 1074, writ denied, 94-2373 (La.1/13/95); 648 So.2d 1337; State v. Walker, 530 So.2d 1200 (La.App. 2 Cir.), writ denied, 532 So.2d 763 (La.1988). Further, we specifically reject the notion that the threat of obtaining a search should vitiate consent.
In Reynaga, 643 So.2d at 434, we held: Because consent is a question of fact involving the credibility of witnesses, the determination of the trial judge, who had an opportunity to observe and hear the witnesses, is given great weight on review. State v. Yarbrough, 418 So.2d 503 (La. 1982). Consent to search given after an illegal arrest or detainment, even where voluntary, "is valid ... only when made under circumstances which show no exploitation of illegality." State v. Zielman, 384 So.2d 359 (La.1980); State v. Dennis, 540 So.2d 550 (La.App. 3 Cir.1989), writ denied, 546 So.2d 171 (La.1989).
We note Defendant was lawfully detained pursuant to an arrest on other charges in the instant case. Reynaga clearly indicates, even in cases of illegal detainment, voluntary consent that is not the product of the illegality may be permissible.
The trial court obviously credited the testimony of the three officers over that of Defendant. The trial court's credibility determinations are entitled to great weight and absent an abuse of that discretion, we will not interfere with those determinations. We find the trial court did not its abuse discretion and its credibility determinations are reasonable when viewed in the totality of the circumstances.
The motion to suppress was properly denied.

THE BATSON ISSUE
Defendant contends, for the first time on appeal, that the trial court erred when it allowed the State to peremptorily excuse prospective juror Rhonda Davis without stating permissible reasons. He claims that this prospective juror was challenged based solely on her race, and that her dismissal was in violation of the equal protection guarantee of the Fourteenth Amendment. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After an unsuccessful attempt at challenging Rhonda Davis for cause, the State peremptorily challenged her. Defendant merely noted for the record that Ms. Davis was "black" without specifically objecting to the dismissal. Defendant's failure to contemporaneously object to the dismissal of Ms. Davis waived any Batson problems with the dismissal. La. Code Crim.P. art. 841; State v. Potter, 591 So.2d 1166 (La.1991).
Defendant also contends that his objection to the entire venire coupled with this notation should nonetheless render the objection sufficient under Article 841. The objection to the entire venire has no particular relevance to a Batson challenge since the latter is concerned with prosecutorial actions which may deprive a defendant of his equal protection while the former involves a challenge to a portion of the judicial process. A timely objection would have placed the trial court on notice that a problem existed and given it a chance to correct the alleged error before it infected the entire proceeding. Simply noting a possible Batson violation for the record does not place the trial court on notice so it can correct a possible error. He cannot "boot-strap" the objection by objecting to the entire venire as such an objection does not place the trial court on notice that a specific Batson violation may exist. By failing to make the timely objection required by La. *754 Code Crim.P. art. 841(A), Defendant waived the alleged violation.

ADMISSION OF THE "PENITENTIARY PACKET"
By this assignment, Defendant contends the trial court erred when it allowed the introduction of Defendant's "penitentiary packet" maintained by the State of Texas to demonstrate prior felony convictions. Defendant's specific assertion is that the Texas record clerk's signature was insufficient to establish the authenticity of the documents because a person other than the clerk appeared in court to authenticate those documents for evidentiary purposes. We note that our supreme court has, on occasion, disallowed persons other than the custodian of records to authenticate documents at trial. See, e.g., State v. Tillman, 356 So.2d 1376 (La.1978). In Tillman, however, the person attempting to authenticate the document also submitted a document that was not certified to be a true and exact copy of the original. In the instant case, the record clerk certified under seal that he was the record clerk of the Texas Department of Criminal Justice-Institutional Division, a penal institution of and situated in the County of Walker, State of Texas. He further certified that he had legal custody of the original files and records of Defendant who was committed to the said institution which included a photograph, fingerprints, and commitments of Defendant's prior convictions. He further certified that he compared the attached copies of the originals on file in his office (identified as CAUSE # 621774 (CNTS 1, 2, AND 3)) and that each "contains, and is a full, true, and correct transcript and copy from its original."
The requirement of authentication or identification as a condition precedent to the admissibility of a document is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it is. La.Code Evid. art. 901(A). Extrinsic evidence of authenticity, as a condition precedent to admissibility, is not required and the document is self-authenticating with respect to a document bearing a seal purporting to be that of any state and a signature purporting to be an attestation or execution. La.Code Evid. art. 902(1). Further, when an original public document is deemed authentic, without proof by extrinsic evidence, a purported copy of the document also shall be deemed authentic when certified a true and correct copy by the custodian or other person authorized to make that certification. La.Code Evid. art. 904. "Public documents" under Articles 902 and 904 refers to documents that reflect the acts of government and the official activities of its officers, agents, and employees. If a document is an original public document and is signed by a person who attests to its authenticity, then it is self-authenticating or self-proving if it bears the seal of a government entity or department, or an agency or officer thereof. See "Official Comments" to Article 902. Therefore, according to our rules of evidence, the Texas documents would be self-authenticating, thereby alleviating the need for the actual custodian to testify. Accordingly, the use of a probation officer, who knew Defendant as well as his prior criminal activity, was appropriate to identify the "penitentiary packet" and testify to Defendant's prior offenses. A continuous chain of custody was not needed as the Texas probation officer made an in-court identification that Defendant was the same individual described in the "pen packet" and her testimony established that the self-authenticated evidence was more probable than not related to the case.
This assignment of error is without merit.

ADMISSIBILITY OF PHYSICAL EVIDENCE
Defendant objected to the admission of several pieces of evidence at the trial on the basis that the proper chain of custody had not been met. That evidence consisted of the 22 caliber rifle, the 12 gauge shotgun, and the marijuana along with the Leesville Police Department property receipts.
In State v. Smith, 463 So.2d 1003, 1005 (La.App. 3 Cir.), writ denied, 466 So.2d 1301 (La.1985), we held:
The Louisiana Supreme Court in State v. Godeaux, 378 So.2d 941 (La.1980), in examining the requirements set forth for the *755 admissibility of demonstrative evidence, stated:
"To admit demonstrative evidence at trial the law requires that the object be identified. The identification can be visual, that is by testimony at trial that the object is related to the case. It can also be identified by chain of custody, that is by establishing the custody of the object from the time it was seized to the time it was offered into evidence. State v. Paster, 373 So.2d 170 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). A continuous chain of custody is not essential to enable the state to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized by the officer. State v. Guzman, 362 So.2d 744 (La.1978)."
Defendant claims two problems with the chain of evidence were present. First, he argues that when the rifles were seized and the marijuana confiscated, custodial information was filled out by the seizing officers, but this evidence was not then signed for in order to demonstrate transfer of custody to the evidence custodian at the station house. Instead, the rifles were locked in the station gun locker and the marijuana dropped in an evidence drop box. Thereafter, the current evidence custodian removed the evidence from the drop box and gun locker on a daily basis, and he then placed any items seized in the evidence lockdown or evidence room. In the case of the marijuana, the chain is continuous through its movement from the evidence lockdown to the crime lab in Shreveport and back to the lockdown. However, when Bobby Hickman, the evidence custodian in charge of all evidence at the time of the incidents surrounding the instant matter, was elevated to Chief of Police, he transferred his duties to Officer Ken Noble. This, Defendant argues, marks the second breach in the chain of custody.
The evidence established that the rifle seized at the scene was confiscated by Lt. Landrum from Defendant. Lt. Landrum filled out the proper evidence receipts and placed the rifle in the police gun locker or firearm cabinet as was the procedure. Next, Chief Hickman, then the evidence custodian, took the rifle out of the firearm cabinet and placed it in the evidence lockdown, which was solely controlled by him. At some time thereafter, Officer Noble assumed the duties and obligations of Chief Hickman and took control of the lockdown and its evidence. The keys were transferred at this time. Lt. Landrum made an in-court identification of the weapon, which bore identifiable initials noted at the crime scene upon confiscation. Other officers identified the rifle as the rifle seized by Lt. Landrum. Minor breaches in the chain of custody did not render the evidence inadmissible when the breaches were inconsequential and safeguards were in place to assure the evidence was more probable than not the same evidence originally seized by the officers. The trial court correctly admitted the evidence.
The marijuana confiscated was argued to be likewise inadmissible because of a similar initial breach in the chain of custody and the assumption of duties of Officer Noble from Chief Hickman. The marijuana and packaging were identified at trial. The trial court ruled that the omission of the transfer signature when the marijuana left the custody of Officer Gore before being placed in the evidence drop box and taken into custody by Chief Hickman was inconsequential. The trial court correctly found that the chain of custody through testing and back to the evidence room was in tact. Again, the trial court found that the transfer of custodial duties was not so egregious as to render the evidence inadmissible. We agree and find that the trial court properly admitted the marijuana into evidence.
Defendant's objection to the shotgun confiscated on January 6, 1996, was based on the same arguments as the preceding two, and do not bear repeating in full. Accordingly, we find that the trial court correctly admitted the evidence objected to at the trial of this matter.
This assignment of error is, likewise, without merit.

*756 CONCLUSION
Defendant's conviction for Possession of Marijuana on Count One of the Bill of Information is reversed. His convictions and sentences on Count Two for Possession of Marijuana, and Counts Three and Four for Possession of Firearm by Convicted Felon are affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.