hBYRNES, J.,
Dissents with Reasons.
I respectfully dissent based on my conclusion that the trial court properly denied *1262 the defendant, Paul Broussard’s motion to suppress.
To detain an individual or a motorist, reasonable suspicion of criminal activity is required. State v. Shaw, 31,786 (La.App. 2 Cir. 3/31/99), 736 So.2d 951. A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La. C.Cr.P. Art. 215.1. “Reasonable suspicion” for an investigatory stop is something less than the probable cause required for an arrest. State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819. A reviewing court must take into account the “totality of the circumstances — whole picture,” giving deference to the inferences and deductions of a trained police officer “that might well elude an untrained person.” United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. Deference should be given to the experience of the policemen who were present at the time of the incident; in reviewing the totality of circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549.
In State v. Huntley, supra. 708 So.2d at 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police “ ‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore “articulate something more than an “ ‘inchoate and unparticularized suspicion or “hunch.”’” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only “ ‘some minimal level of objective justification-’” Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the “totality of the circumstances — the whole picture,” giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 499 U .S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police “not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.” Id. [Emphasis added.]
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: “the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action,” citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need “articulable facts” taking into account the entire picture. If the officers were required to articulate the factors, the cases would express that the ^officers need to have articulated facts; however, the officers only need articulable facts, taking into account the entire picture. In other words, the officers need not articulate reasons justifying a stop; however, articulable facts must be found or determined from the record under the totality of circumstances.
In State v. Gray, 99-47 (La.App. 5 Cir. 6/1/99), 738 So.2d 668, the police officer was alone on patrol at 1:06 a.m. in Reserve, Louisiana, when he observed five *1263 young males standing by a parked car with illuminated lights. The officer turned his vehicle around and drove back to the parked car to investigate because he thought that one of the subjects was a juvenile who was in violation of the curfew ordinance. As the officer approached, one of the subjects fled into an apartment, but the others remained standing by the parked car. The officer asked the remaining individuals to approach the police vehicle and to remove their hands from their pockets. The officer testified that the defendant refused to comply. The defendant would not approach the police vehicle and kept his hands in his pockets although the officer repeatedly asked the defendant to remove them. The officer personally escorted the defendant to the police vehicle. The officer asked the four individuals to produce identification and to place their hands on the police vehicle so he could conduct a weapons check. The defendant refused to remove his hands from his pockets and the officer handcuffed the defendant for the sole purpose of a limited weapons frisk. The officer also requested that a backup unit come to the scene. Under the totality of circumstances, specifically where the defendant became nervous, would not take his hands out of his pockets, or would not approach the police vehicle, the appellate court found that the officer had the requisite reasonable suspicion to justify the investigatory stop and frisk for weapons. The facts constituted an investigative stop rather than an arrest.
14An investigatory stop, requiring only a reasonable suspicion, is as complete a restriction on the liberty of movement as an arrest; a stopping for investigation is not lesser intrusive because the restriction of movement is incomplete, but rather because it is briefer than an arrest. State v. Vincelli, 555 So.2d 21 (La.App. 1 Cir.1989); State v. Walker, 530 So.2d 1200 (La.App. 2 Cir.1988), writ denied 532 So.2d 763 (La.1988); State v. Senegal, 95-796 (La.App. 3 Cir. 12/6/95), 664 So.2d 832. Inherent in an officer’s right to make an investigatory stop of an individual and to demand his name, address, and explanation of his actions is the right to detain the subject temporarily to verify information given or to obtain information independently of his cooperation. State v. Cabanas, 594 So.2d 404 (La.App. 1 Cir.1991), writ denied 598 So.2d 371 (La.1992); State v. Moncriffe, 522 So.2d 1187 (La.App. 4 Cir.1988).
In State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, writ denied 99-1077 (La.9/24/99), 747 So.2d 1118, a confidential informant provided a tip about illegal narcotics sales from a certain residence, and described that suspect named Brian Williams would be leaving the residence at a certain time, carrying illegal narcotics. The officers observed the described suspect leave the house, get into a car matching the informant’s description, and drive away. Two other vehicles left the house at the same time. The officers decided to conduct an investigatory stop on all three vehicles based on the information obtained from the confidential informant. The police radioed Deputy Villani, who was in a nearby police unit. Deputy Villani made a routine stop of the vehicle, had the occupants exit for safety purposes, and obtained their identifications. The passenger was identified as the defendant, Brian Williams. Upon looking into the car with his flashlight, Deputy Villani saw clear plastic bags in plain view. The field tested Isbags were positive for narcotics. The defendant was transported to the residence, where he gave his consent to search. The owner of the house also gave her consent to search the premises. Other narcotics, drug paraphernalia, and drugs were found.
Williams contended that the drugs from his car was the result of an invalid stop. He characterized the initial stop as an “arrest” requiring the officers to have probable cause to believe that the defendant was committing a crime, rather than to have reasonable suspicion of criminal activity. The defendant testified that his ex-fiance’ picked him up to go for a talk *1264 when the vehicle was stopped, the deputy-put him on the ground, and searched the vehicle. The appellate court found that the informant’s tip could provide the police officer with reasonable cause to detain and question a suspect. The Fifth Circuit stated:
Here, the evidence supports the conclusion of the trial court that Officer Villani had a reasonable suspicion of criminal activity pursuant to C.Cr.P. art. 215.1 sufficient to justify the initial stop. Defendant characterizes the detention at that point as being an arrest, rather than a stop. We do not find that the circumstances indicated an intent to effect an extended restraint on the liberty of the defendant until after the drugs were discovered in plain view. The officer ascertained the identification of the occupants and removed them from the vehicle for safety reasons. Considering his information of the suspect as having illegal drugs, such action is reasonable. Until the point that the drugs were discovered, this was a lawful investigatory stop under C.Cr.P. art. 215.1.
Id. p. 12, 735 So.2d at 71.
In Williams, an officer’s initial investigatory stop, in which he ascertained the identification of the occupants and removed them from the vehicle for safety reasons, was lawful, based on the officer’s information from a confidential informant that the suspect had illegal drugs. The officers had reasonable cause to believe that the defendant or someone in the vehicle that he was driving, was |ficommitting or was about to commit a crime, thus warranting a valid investigatory stop.
In the present case, there was clearly reasonable suspicion to justify an investigatory stop of the defendant, given the observations of the police. In Williams, supra, the reliable confidential informant gave information that warranted an investigatory stop of the vehicles leaving a residence. In the present ease, there was no informant’s tip confirmed by the officers’ observation of the described suspect leaving the residence at the time provided in the tip. However, in the present case, the police actually observed a drug transaction with an undercover agent. Sergeant Bob Bardy testified that just after the subject Freddie Allen engaged in a narcotics transaction and sold drugs to Detective Duane Corkum, an undercover officer, the defendant Paul Broussard was in a Jeep on the scene. Allen got into the Jeep, and Officer Corkum broadcast that possibly another drug deal was taking place. Allen left the jeep. When the defendant Brous-sard was driving away, he headed toward Sergeant Bardy’s direction. Sergeant Bardy decided to stop the defendant Broussard because he thought that Allen might have passed on the marked money to the defendant, and Officer Corkum’s broadcast showed that he also believed that another drug transaction may have taken place with Allen in the Jeep. Sergeant Bardy got out of his car and screamed, “Police. Stop.” Sergeant Bardy testified that the defendant Broussard “then put his Jeep in reverse and attempted to flee at which time Detective Gay, who was the additional support officer for Officer Corkum, was following the Jeep and he stopped in back of the Jeep, stopping his escape efforts .”
To determine whether an actual stop of an individual is imminent, the following factors may be useful in assessing the extent of police force employed [7and in determining whether that force was virtually certain to result in an actual stop of an individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. State v. Tucker, 626 So.2d 707, 712-713 (La.1993), opin *1265 ion reinstated on rehearing by 626 So.2d 720 (La.1993).
In Tucker, id., acting on repeated complaints of drug-related activity, the police conducted a drug sweep in certain high-crime areas. The sweep began when approximately ten to twelve marked police vehicles carrying 20 to 30 officers converged. When two men noticed the approaching police cars, they quickly broke apart and began to leave. Officer Wilson stopped his car and began to get out while simultaneously ordering the two men to “halt” and “prone out.” One man lay down immediately. The other, Tucker, moved several steps and tossed away a plastic bag. He then lay down. The Louisiana Supreme Court noted:
.... while the Fourth Amendment only protects individuals from “actual stops” by law enforcement officers, [California v.] Hodari D, [499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ], our constitution also protects individuals from “imminent actual stops.” Therefore, it becomes incumbent upon us to now determine what constitutes an “actual stop” and an “imminent actual stop” as those terms were used in Belton.
... We agree with the United States Supreme Court, an “actual stop” of an individual has not occurred when a police officer yells “Halt!” at a fleeing form which continues to flee. Thus, we hold that an individual has |snot been “actually stopped” unless he submits to a police show of authority or he is physically contacted by the police.
Tucker, 626 So.2d at 712. [Emphasis added.]
The Louisiana Supreme Court stated that it “could not conclude an actual stop of Tucker was ‘virtually certain’ to occur at the time he abandoned the evidence. Thus, at the time Tucker abandoned the marijuana he had not been unconstitutionally seized.” Id., 626 So.2d at 713. The Supreme Court upheld Tucker’s conviction.
In the present case, Sergeant Bardy yelled at the defendant to stop. At this point the officer had reasonable suspicion for an investigatory stop because the drug transaction between Freddie Allen and the undercover officer had just taken place; and Allen got into the Jeep with Brous-sard. The officer had reason to believe that Broussard was involved with Allen’s drug dealing. Allen could have handed the cash to Broussard or could have replenished his drug supply. It made no difference that Allen got out of the Jeep before the police stopped it. Allen had contact with Broussard so that the officers could believe that Broussard was Allen’s companion in drug dealing or another drug transaction had taken place. The officers had reason to believe that Broussard had engaged in illegal conduct, and an investigatory stop was justified. When Sergeant Bardy yelled to Broussard to stop, which equaled an imminent actual stop, Brous-sard' tried to back up the Jeep to get away. At this point, based on Broussard’s attempt to flee, the officers’ suspicions had additional support to make the actual stop. Officer Gay, who was following behind the Jeep, was justified in stopping his vehicle to keep Broussard from fleeing. The circumstances did not indicate an intent to effect an extended restraint on the liberty of the defendant until after the drugs were discovered during lathe safety pat-down pursuant to an investigatory stop. The officers properly made an investigatory stop rather than an arrest.
La. C.Cr.P. art. 215.1(B) provides for a limited frisk for weapons during an investigatory stop:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
*1266 The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger. State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. It is clear that an officer may make a protective search of the suspect for his own safety and the safety of others. State v. Davis, 92-1623 (La.1994), 637 So.2d 1012, cert. denied, Davis v. Louisiana, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
In State v. Wartberg, 586 So.2d 627 (La.App. 4 Cir.1991), this court noted that any person who is suspected of dealing drugs is probably armed with a weapon and officers need not refer to specific particular facts concerning the danger to their safety.
In the present case, one undercover officer had just had a drug transaction with Freddie Allen. This articulable factor, that drugs were involved, provided a reason for the officers to fear for their safety. Sergeant Bardy testified that Broussard had crutches and told the sergeant that he had been shot a week earlier in the same neighborhood. These factors supported the officers’ concern for their safety and the officers’ reason for a pat-down frisk of the defendant. Given the facts and circumstances known to the officers and because weapons and violence | inare commonly associated with illegal drug activity, the officers could reasonably infer that Brous-sard was armed and dangerous, thus justifying the safety pat-down search of the defendant.
Although the actions of the subjects may have been innocent if considered individually, under the totality of the circumstances — the whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officers had reason to justify the investigatory stop. The safety frisk of Broussard was justified based on a proper investigatory stop.
Considering that the officers had reasonable suspicion for an investigatory stop, this case would fall within the “plain feel” exception recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under Dickerson, when a police officer lawfully pats down a suspect’s clothing for weapons and feels an object whose contour or mass makes its identity immediately apparent to be contraband, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons.
In State v. Lavigne, 95-0204 (La.App. 4 Cir. 5/22/96), 675 So.2d 771, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140, a crack pipe was lawfully seized because it was immediately apparent to the officer that the object felt like a crack pipe based on the officer’s sense of touch. The officer could not know for certain until he actually looked at it to confirm that it appeared to be a crack pipe.
In the present case, Officer Bardy testified that: “when I placed my hand on his pockets I heard a crinkling sound and felt a lump like substance, at which time I believed this to be lumps and crackling consistent with crack cocaine.” When asked why he though Broussard possessed contraband. Officer Bardy further In answered: “The consistency of the packaging, the lump feeling, the crackling of the plastic and more so in effect that we were in the area where a drug deal had transpired and coupled with his evasive actions in attempting to flee from me as I was alongside of his Jeep.” The record shows that Officer Bardy had completed over twenty years of police service and was the Commander of the Narcotics Division. Under the totality of circumstances, giving deference to the police officer’s training, the crack cocaine was properly seized pursuant to an investigatory stop because of the officer’s immediate and reasonable belief that it was crack cocaine based on the officer’s sense of touch. There was no invasion of the defendant’s privacy beyond that already authorized by the officer’s search for weapons. The officer found twelve individual packages of *1267 contraband in Broussard’s pocket. The contraband was properly seized pursuant to an investigatory stop and valid safety pat-down search. The officers had probable cause to arrest the defendant at that point.
Focusing on the intent of the officers, the officers’ intent was to make an investigatory stop and not to formally arrest the defendant at the time of the stop. The stop was brief and reasonable to investigate possible criminal activity. See State v. Solomon, 93-1199 (La.App. 3 Cir. 3/2/94); 634 So.2d 1330.
Accordingly, I would affirm the defendant’s conviction and sentence.