842 So.2d 326 (2003)
STATE of Louisiana
v.
Earl DABNEY.
No. 2002-K-0934.
Supreme Court of Louisiana.
April 9, 2003.
*327 Richard P. Ieyoub, Attorney General, Earl B. Taylor, District Attorney, Alisa A. Gothreaux, Donald J. Richard, Opelousas, for Applicant.
William T. Barstow, Opelousas, Edward K. Bauman, Lake Charles, for Respondent.
PER CURIAM.
The court of appeal case reversed defendant-respondent's convictions and sentences for possession of a firearm by a convicted felon (La.R.S.14:95.1) and possession of a firearm while in possession of controlled substances (La.R.S.14:95(E)), on grounds that the state's case failed to negate the exculpatory account offered by respondent that he did not intend to exercise any dominion or control over the firearm subsequently retrieved by the police from under the driver's seat of a vehicle he had borrowed from his girlfriend, once he realized the gun was in the car. State v. Dabney, 01-1110 (La.App. 3rd Cir.2/27/02), 809 So.2d 1196. However, the court of appeal could reach that conclusion only by overriding the rational credibility choices made by the jurors in returning their verdicts. Cf. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983)("It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson [v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)] standard of review."). We therefore granted the state's application to reverse the decision below.
The undisputed evidence at trial established that on the evening of September 4, 1997, the police removed a .45 caliber automatic, a gun case, a clip, and nine extra cartridges from beneath the driver's seat of a vehicle parked in the middle of the 700 block of Kim Drive in Opelousas, Louisiana. However, the circumstances under which the police found the weapon and accounted for its ownership were sharply disputed. According to Officers Harrison and Brown, they had been on routine patrol with the windows of their cruiser rolled down when the distinct and heavy odor of burning marijuana drew their attention to a group of men gathered between a housing project and a white Toyota parked in the middle of the 700 block of Kim Drive. The officers immediately pulled over in front of the group. As the officers were exiting their vehicle, Sgt. Harrison observed the defendant motion as if "he was putting something in his mouth, and I got down and went up to ask *328 him what it was." Respondent replied that it was a "blunt" and stuck out his blackened tongue to provide the officer with a view of the partially-smoked cigar. The officer explained to jurors that a blunt is an ordinary cigar opened to interlace the tobacco with marijuana.
While Sgt. Harrison questioned respondent about the blunt, Officer Brown noticed a bag of marijuana on the ground in between respondent's feet. When Brown picked up the marijuana, the respondent admitted, "It's mine." Respondent also admitted that the white Toyota parked next to him belonged to his girlfriend, Tierra Jones, and later volunteered that he had driven the car to the location on Kim Drive. Respondent consented to a search of the vehicle but cautioned Sgt. Harrison she would find a .45 caliber automatic under the driver's seat. The officer went into the vehicle and retrieved the weapon and its associated paraphernalia from the location described by respondent.
According to Opelousas Police Chief Larry Caillier, when Tierra Jones arrived at the stationhouse, after receiving notice of respondent's arrest, she expressed surprise to learn that the gun had been retrieved from the vehicle. Jones informed him that "she had bought the gun for house protection and she didn't know that the gun had left the house." Chief Caillier recalled that Jones appeared "really heartbroken of [respondent] being arrested and being involved with drugs and a weapon."
Respondent's version of the facts differed greatly from the accounts given by the state's witnesses. He testified that after borrowing Tierra Jones's vehicle, he picked up a friend and drove him to his mother's residence located on Kim Drive. While the friend went inside, respondent remained at the curb speaking with a group of friends gathered in front of Jones's vehicle. In the course of that conversation, cut short when the police arrived approximately 15 minutes later, respondent went into the car to retrieve a cassette tape from under the driver's seat. At that moment, respondent told jurors, he saw a gun case under the seat and immediately knew he would be in trouble if he got back in the car because the terms of his probation for a prior unrelated offense prohibited possession of firearms. Respondent maintained that he had no knowledge of what was under the driver's seat in Jones's car until he reached under the seat for the cassette tape. He had not even known that Jones had purchased the weapon, as she told him only that she had placed a gun on layaway. Respondent informed jurors that once he realized the gun was in the car, if he had "had any intentions of leaving, it was surely not in that car." Jeremiah Johnson, one of the members of the group standing out on Kim Drive, corroborated the circumstances under which respondent claimed to have discovered the weapon. According to Johnson, respondent came out of the car holding the cassette tape and "talkin' `bout his parole."
Moments later, Officers Harrison and Brown arrived on the scene. Respondent testified that Officer Harrison immediately challenged him to explain a burning smell in the air and to show her what he had in his mouth. However, Harrison did not order him to open his mouth and respondent did not inform the officer that he had been smoking a blunt. As for the plastic bag of marijuana, Officer Brown circled the patrol unit, walked over to him, held out his hand, and told him, "Take it." Respondent refused but found himself cited for possession of marijuana. Respondent flatly denied in his testimony that he had been smoking marijuana or that the plastic bag of marijuana had belonged to *329 him. Johnson also denied that respondent had been smoking marijuana before the officers arrived or that the smell of marijuana had been hanging in the air. He further testified that the plastic bag had not been visible anywhere on the ground before Officer Brown bent down and came up with it in his hand.
For her part, Tierra Jones denied informing Chief Caillier that she had purchased the weapon for home defense and therefore had been surprised that the officers had found the gun in her car. Jones testified that she had purchased the gun to protect herself when making large cash deposits at night as part of her job. Jones also stated that since her purchase of the weapon on August 25, 1997, she always kept it "underneath the seat in the car." She had, however, forgotten about the weapon when she gave respondent her car on the day of his arrest to use while she was at work because his own vehicle was in the shop for repairs. "If I would've known," Jones told jurors, "he would've never got the car."
In reversing respondent's conviction on both counts, the court of appeal characterized as "uncontroverted" the circumstances under which respondent discovered the gun in Jones's car. It took a similar view of respondent's subsequent disavowal, as corroborated by the testimony of Jeremiah Johnson, of any intent to exercise dominion or control over the weapon by taking the wheel of the Toyota again at the risk of jeopardizing his probationary status. What remained of the state's case was therefore only respondent's "mere acknowledgment of the gun being inside the car," an insufficient basis "to prove the intent or guilty knowledge necessary to demonstrate constructive possession [of the weapon][on either count]." Dabney, 01-1110 at 8-9, 809 So.2d at 1202.
The court of appeal erred by substituting its appreciation of the evidence at trial for that of the jurors when it concluded that the state had failed to prove respondent's dominion and control over the gun sufficient to place it in his constructive possession. State v. Mose, 412 So.2d 584, 585 (La.1982); State v. Day, 410 So.2d 741, 743 (La.1982). In fact, critical portions of the defense offered at trial were controverted by the state. Respondent and Johnson both denied any marijuana use, and respondent denied possession of the bag of marijuana found on the scene by Officer Brown. On the other hand, Officers Harrison and Brown unequivocally testified that the heavy odor of burning marijuana had been what first caught their attention about the group of men gathered in the middle of the 700 block of Kim Drive. They subsequently caught respondent attempting to conceal a marijuana blunt in his mouth and Brown retrieved a cellophane bag filled with marijuana from between respondent's feet. According to the officers, respondent then admitted that the marijuana belonged to him. If jurors accepted the testimony of Officers Harrison and Brown, they could discount entirely the contrary testimony of respondent and Johnson and question the credibility of the rest of their testimony regarding respondent's discovery of the weapon in Jones's vehicle.
As to respondent's exculpatory disclaimer based on his sensitivity to his probationary status, jurors were not specifically informed at trial that respondent's possession of marijuana was also a violation of his probation. See La.C.Cr.P. art. 895(A)("When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct...."). However, as a matter of their common experience, jurors could find that respondent's casual and open violation of *330 Louisiana's drug laws appeared completely inconsistent with his professed concern about his probationary status if he were again to take the wheel of Jones's car with knowledge of the gun underneath the seat. Respondent had no answer to the prosecutor's question of why he could not simply have asked one of the group's members to remove the gun from the car and hold it until Jones reclaimed her property.
Finally, because the defense did not object on hearsay grounds to the testimony of Chief Caillier regarding his conversation with Tierra Jones, his account of her statements on the night of respondent's arrest became substantive evidence for the jury to consider, as well as evidence of a prior inconsistent statement bearing on the credibility of her in-court testimony that she had purchased the gun for protection on the job and had simply forgotten about it when respondent borrowed her car. State v. Allien, 366 So.2d 1308, 1311 ("In the ordinary case hearsay evidence not objected to constitutes substantive evidence.").
Under these circumstances, rational jurors could conclude that respondent had lied about his discovery of the weapon and drawn the logical inference from Chief Caillier's testimony regarding Tierra Jones's statements to him that without her knowledge respondent had removed the weapon from her home and then placed the gun under the seat when he borrowed her car. Rational jurors could also conclude that, even accepting respondent's account as to his discovery of the gun, his behavior standing next to the vehicle did not constitute an act of divestiture of the weapon, which remained subject to his dominion and control by virtue of its proximity to him in a vehicle in his exclusive possession at the time. See State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074; see also State v. Blache, 480 So.2d 304, 308 (La.1985)(even if a convicted felon's possession of a firearm is justified as a matter of self defense, he must divest himself of the weapon at the earliest practical opportunity); State v. Tatum, 27,301, p. 4 (La. App. 2nd Cir. 9/27/95), 661 So.2d 657, 661 ("If there is reasonable time for a felon to divest himself of possession of a weapon, no matter how it was obtained, he must do so."). In either case, the evidence was sufficient on both counts that respondent had constructive possession of the gun. Cf. State v. Blanchard, 99-3439, p. 9 (La.1/18/01), 776 So.2d 1165, 1173 (requiring a nexus between the firearm and the drug offense for purposes of La.R.S. 14:95(E) when the firearm is not in the actual possession of the defendant and not within his or her immediate control).
The decision of the Third Circuit is therefore reversed and this case is remanded to the court of appeal for consideration of respondent's remaining assignment of error pretermitted on original appeal.
DECISION OF THE COURT OF APPEAL REVERSED; CASE REMANDED FOR FURTHER CONSIDERATION.
JOHNSON, J., dissents.