# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 06-474

**STATE OF LOUISIANA**

**VERSUS**

**JOHN THOMPSON, III**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. CR-578-04
HONORABLE WENDELL R. MILLER, PRESIDING
\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Michael G. Sullivan and Glenn B. Gremillion, Judges.

Cooks, J., dissents in part and assigns reasons.

**AFFIRMED.**

**Bennett R. LaPoint, Assistant District Attorney**
**P.O. Drawer 1388**
**Jennings, LA 70546**
**(337) 824-1893**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Derriel C. McCorvey**
**115 W. Main Street, Suite 14**
**P.O. Box 2473**
**Lafayette, LA 70502**
**(337) 291-2431**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **John Thompson, III**

**COOKS, Judge.**

_____The Defendant, John Thompson, III, was charged with illegal carrying of weapons, in violation of La.R.S. 14:95(E). Defendant entered a plea of not guilty. A jury returned a verdict of guilty, and Defendant was sentenced to seven years at hard labor, to be served without benefit of probation, parole, or suspension of sentence. Defendant filed a Motion to Reconsider Sentence, which was denied.

Defendant filed this appeal and is now before this court asserting the following six assignments of error:

1) the evidence was insufficient to support his conviction;

2) the trial court erred in revising its ruling on his motion to suppress;

3) the trial court erred when instructing the jury regarding constructive possession;

4) the trial court erred in failing to include attempt in the jury instructions;

5) his right to trial by jury of his peers was denied; and

6) the trial court erred in sentencing him to seven years at hard labor.

## _____ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Defendant contends the evidence, when viewed in the light most favorable to the prosecution, was insufficient to sustain a verdict of guilty of illegal carrying of weapons.

> In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. _Jackson v. Virginia_, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); _State v. Captville_, 448 So.2d 676, 678 (La.1984).

_State v. Pigford_, 05-477, pp. 5-6 (La. 2/22/06), 922 So.2d 517, 520-21.

Louisiana Revised Statute 14:95(E) provides, in pertinent part, as follows:

-1-

If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, . . . while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence.

Thus, in order to convict Defendant of this crime, the State was required to prove beyond a reasonable doubt that Defendant: "(1) knowingly or intentionally possessed any firearm or other instrumentality customarily used o[r] intended for probable use as a dangerous weapon, while at the same time (2) knowingly or intentionally possessing a controlled dangerous substance . . . ." *State v. Blanchard*, 99-3439, p. 10 (La. 1/18/01), 776 So.2d 1165, 1174 (footnote omitted).

Natassia Arceneaux testified that on March 1, 2004, after she first saw Defendant at the home of another woman, he ran her off the road and subsequently followed her to the Jennings Police Department. At a hearing on Defendant's motion to suppress, Arceneaux testified she saw Defendant with a gun that night.

Sergeant Kevin Hoover testified that Arceneaux entered the police department and claimed the Defendant ran her off the road, followed her to the police department, pulled up behind her, and got out with a gun. At that time, Sergeant Hoover, Lieutenant Ferroll LeBlanc, and Officer Michael Hill began looking for Defendant.

Subsequently, Deputy Angie Theunissen of the Jefferson Davis Parish Sheriff's Office saw Defendant's vehicle weaving in the roadway at a caution light in Roanoke. Deputy Theunissen was advised that officers with the Jennings Police Department were looking for Defendant to question him regarding the gun incident, but he should not be stopped until he was closer to the roadblock set up by those officers. Defendant eventually pulled into the driveway of Henry Riley, III. He got out of his vehicle and was walking toward the house when Deputy Theunissen stepped out of

her car and asked Defendant to approach her vehicle. Defendant complied with the request. At that time, Defendant was approximately thirty to thirty-five feet from his vehicle.

Lieutenant Ferroll LeBlanc arrived at the scene followed by Sergeant Hoover. Lieutenant LeBlanc testified he asked Defendant if he had a gun. Defendant stated he did, and Lieutenant LeBlanc then asked if he could look for the gun. Defendant informed Lieutenant LeBlanc he could find the gun in the center console of the vehicle. Lieutenant LeBlanc's testimony was confirmed by Sergeant Hoover. Sergeant Hoover testified that while Lieutenant LeBlanc went to look for the gun he patted down Defendant, finding one thousand four hundred dollars in Defendant's front pocket.

Lieutenant LeBlanc testified he opened the center console of Defendant's vehicle and found a revolver. As he was removing the gun from the console, Lieutenant LeBlanc noticed a bullet and a "white powdery substance" that appeared to be cocaine on the driver's seat. Sergeant Hoover confirmed Lieutenant LeBlanc's findings. Deputy Douglas Britnell then retrieved a field test kit from the trunk of his police car and gave it to Lieutenant LeBlanc and Sergeant Hoover. The white substance was then tested, and the results were positive for cocaine.

Sergeant Hoover retrieved additional bullets, a speed loader, and a syringe from the console of Defendant's vehicle. He also found a green pill bottle with a white cap "right at the front of the driver's seat kind of right underneath the driver's seat." The bottle contained a "rock-like powdery substance." Lieutenant LeBlanc saw Sergeant Hoover retrieve the bottle.

Deputy Theunissen, whose police car was twelve to fifteen feet from Defendant's vehicle during this time, testified she did not see anything on the driver's

seat of Defendant's vehicle, nor did she remember seeing a pill bottle on the floor of the vehicle. Deputy Theunissen later indicated it was possible these things were on the seat and she did not see them because her attention was not focused on that area.

Officer Michael Hill testified he handcuffed Defendant after he was informed that a gun and paraphernalia had been found inside Defendant's vehicle. He then transported Defendant to the police station.

While at the police station, Sergeant Hoover noticed a "white patch" on the back of Defendant's pants and took a photograph of it. Sergeant Hoover testified the white powder on Defendant's pants was the same consistency as the substance found on the seat of the Defendant's vehicle.

Henry Riley, III, testified that at 2:00 a.m. on March 1, 2004, Defendant was on his porch knocking on the door. At that time, a female officer pulled up and asked Defendant to speak with her. Once several other officers arrived, Riley stated Defendant was searched and handcuffed. After he was handcuffed, Defendant was brought to a police car. Riley testified Defendant was not asked for permission to search his vehicle. However, "they" went inside the Defendant's vehicle and "came out" with a gun, which was placed on top of the female officer's car. The officer with the tan shirt then "went to his vehicle, and he come out with a -- a clear bottle." The bottle was taken from the trunk of the officer's car. According to Riley, the group of officers then went back to Defendant's vehicle for a few minutes and one of the officers "came out" and had the bottle in his hand and was shaking it. One of the officers then said "you can let him know he's being arrested."

Riley was shown the bottle Sergeant Hoover testified he found on the driver's side floor of Defendant's vehicle, and Riley indicated that it looked like the bottle he saw an officer get out of the trunk of his car. Riley was also shown the field test kit

-4-

that was used the night of the offense, and he testified it was not the bottle retrieved from the police car. He was positive the green bottle he was shown in court was the clear bottle he saw the night of the offense.

The lab report established the white powdery substance found on Defendant's seat and in the green plastic bottle found on the floor of Defendant's vehicle tested positive for cocaine base.

Defendant argues the State was required to prove that the firearm had to be within his immediate control "at the time of arrest." Defendant further argues he exercised no control over the gun or drugs found inside his vehicle, as he was approximately thirty feet away from his vehicle when he was arrested. Defendant also asserts there was no connection between the gun and the drugs. Additionally, Defendant argues the State failed to prove beyond a reasonable doubt that he was ever in possession of the drugs based on the eyewitness testimony of Deputy Thenuissen or that there was a nexus between the gun and the drugs. Therefore, the evidence presented was insufficient to support the jury's verdict.

We find the jury's verdict indicates it chose to believe the testimony of the several police officers over that of Riley or the equivocal observations of Deputy Theunissen. That credibility determination should not be second guessed by this court. *State v. Anderson*, 03-1601 (La.App. 3 Cir. 5/12/04), 872 So.2d 1251. Accordingly, the evidence proves, beyond a reasonable doubt, that a gun and cocaine were found inside Defendant's vehicle.

We turn to address Defendant's argument that he did not have possession of the gun and drugs found inside his vehicle and they were not in his immediate control. In *Blanchard*, 776 So.2d 1165, the supreme court stated the following regarding the term "possess" and the requirements of La.R.S. 14:95(E):

-5-

This Court has previously considered the meaning of the word "possess" in La. R.S. 14:95(E). In *State v. Sandifer*, [95-2226 (La.9/5/96), 679 So.2d 1324] *supra*, . . . . [W]e held that the word "possess" "need not be defined statutorily because it has a 'well known and commonly understood meaning.'" 679 So.2d at 1331 (citing *State v. Richard*, 245 La. 465, 158 So.2d 828, 831 (1963)). We held that in this statute, as in the statutes dealing with possession of drugs and possession of guns, the term "possess" "is broad enough to encompass both 'actual' and 'constructive' possession." *Id*. . . . Thus, we have already held that "possession" under La. R.S. 14:95(E), taken in its usual sense, includes constructive possession and we reaffirm that holding today. Further, this holding is reinforced by the fact that to interpret "possess" to mean only "actual possession" would lead to absurd consequences, as it would fail to punish a drug dealer found with a load of guns and drugs in the trunk of his car because the guns would not be on his person and they might not be found to be within his immediate control,[9] depending on his location.

——————————

[9]This court has not interpreted the term "immediate control" for purposes of La.R.S. 14:95(E). However, in *Sandifer*, we found that where defendant was found sleeping in the driver's seat of a car with a gun on the passenger seat and a gun on the floor, these guns were within his immediate control. We have interpreted the term "immediate control" under La. R.S. 14:64, which defines armed robbery as the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. This Court has stated the "immediate control" requirement of the armed robbery statute is satisfied when property is taken is within the presence of the owner. *State v. Cooks*, 97-0999 (La.1998), 720 So.2d 637, 652; *State v. Refuge*, 300 So.2d 489 (La.1974). This Court has further noted that armed robbery may occur where property taken is not in actual contact with the victim. *Id*.; *State v. Verret*, 174 La. 1059, 142 So. 688 (1932); *State v. Boelyn*, 432 So.2d 260 (La.1983).

*Id*. at 1169-70 (footnotes 7 and 8 omitted).

The supreme court went on to find the following:

[U]nder La. R.S. 14:95(E), when it cannot be established that the defendant was using or in actual possession of a firearm or that a firearm was within his or her immediate control, the state must prove more tha[n] mere possession of the firearm. It must prove some connection between the firearm possession and the drug offense. This connection might be established by the following evidence: (1) the type of firearm involved; (2) the type of controlled dangerous substance involved; (3) the quantity of drugs involved; (4) the proximity of the firearm to the drugs; (5) whether the firearm is loaded; and (6) any other relevant evidence.

*Id*. at 1173.

In *State v. Dabney*, 02-934 (La. 4/9/03), 842 So.2d 326, the defendant was

convicted of possession of a firearm while in possession of a controlled dangerous substance and possession of a firearm by a convicted felon. On the date of the offense, a group of men were gathered near a car parked in the middle of the 700 block of Kim Drive in Opelousas. Police testified they smelled a heavy odor of marijuana and pulled over in front of the group. The officers alleged marijuana was found near the defendant's feet and a partially smoked blunt was inside his mouth. The officers testified the defendant consented to a search of the vehicle he was driving and informed them a gun was located under the driver's seat. Police then retrieved a gun from the vehicle. The defendant denied possessing any drugs and indicated he discovered the gun when he went to retrieve a cassette tape from the vehicle. The defendant testified he had no intention of leaving the scene in the vehicle, as he was on parole at the time. A defense witness corroborated the defendant's testimony.

The supreme court in *Dabney* found that rational jurors could have concluded, even accepting the defendant's account as to his discovery of the gun, that his behavior in standing next to the vehicle did not constitute an act of divestiture of the weapon, "which remained subject to his dominion and control by virtue of its proximity to him in the vehicle in his exclusive possession at that time." *Id*. at 330. The court also found the defendant had constructive possession of the gun. The court then cited the following: "*Cf. State v. Blanchard*, 99-3439, p. 9 (La. 1/18/01), 776 So.2d 1165, 1173 (requiring a nexus between the firearm and the drug offense for purposes of La.R.S. 14:95(E) when the firearm is not in the actual possession of the defendant and not within his or her immediate control)." *Id*.

The supreme court then reversed the decision of this court, which had reversed the defendant's conviction, and remanded the case. It did not, however, specifically

discuss whether there was a nexus between the drugs and the gun.

In *State v. Jarvis*, 01-1277 (La.App. 4 Cir. 2/13/02), 811 So.2d 38, *writ denied*, 03-248 (La. 2/13/04), 867 So.2d 677, the defendant was stopped for a traffic violation. The defendant was asked to step out of his vehicle and, as he exited, a bag of marijuana fell to the ground. When the officer reached over to pick up the bag, he saw a revolver on the floorboard of the driver's side of the vehicle. The defendant was immediately arrested. On appeal, the defendant alleged the trial court erred in failing to properly instruct the jury on the state's burden of proof, as the trial court did not instruct the jury that a connection was required between the possession of the weapon and the possession of the drugs. The court in *Jarvis* found that the defendant's reliance on *Blanchard*, 776 So.2d 1165, was misplaced because *Blanchard* was limited to cases of constructive possession. Although the defendant denied any knowledge of the weapon and drugs, the court found the evidence established the weapon was on the floor at the defendant's feet; therefore, the gun was in the defendant's immediate control prior to his stepping out of the vehicle.

Defendant in this case was not in actual possession of the gun and the drugs at the time he was approached by Deputy Theunissen, as he had just exited his vehicle where the items were located. However, the gun and the drugs were in the Defendant's immediate control prior to his exiting the vehicle, as in *Jarvis*, 811 So.2d 388. Therefore, the State was not required to prove a nexus between the gun and the drugs. However, the State was also required to prove Defendant knowingly possessed the gun and the drugs.

> [G]uilty knowledge, an essential component of any showing that a defendant has constructive possession of contraband, *i.e.*, dominion and control over it although the contraband is not in his actual possession, *State v. Bell*, 566 So.2d 959, 960 (La.1990); *State v. Sweeney*, 443 So.2d 522, 528 (La.1983), may be inferred from the circumstances of the transaction. *Major*, 03-3522[,] at [p.] 8-9 [(La. 12/1/04)], 888 So.2d

[798] at 803; *State v. Goiner*, 410 So.2d 1085, 1087 (La.1982).

*Pigford*, 922 So.2d at 521.

The evidence proves Defendant had knowledge that the gun was in his vehicle, as he informed police of its location. Additionally, the evidence proves Defendant had guilty knowledge of the drugs. In *State v. Wright*, 05-477 (La.App. 5 Cir. 12/27/05), 920 So.2d 871, 875, the court stated the following:

> In the present case, defendant was stopped while driving a vehicle in which cocaine was found in plain view on the center console between the driver's seat and passenger's seat. As the driver, defendant necessarily had dominion and control over the vehicle he was driving. As the sole occupant, it is presumed he had dominion and control over the contents of the vehicle, including the cocaine which was within his reach while he was driving. *See*, *State v. Walker*, [03-188 (La.App. 5 Cir. 7/29/03), 853 So.2d 61, *writ denied*, 03-2343 (La. 2/6/04), 865 So.2d 738] *supra*, and *State v. Christopher*, 561 So.2d 935, 939-940 (La.App. 2 Cir.1990), *writ denied*, 567 So.2d 1124 (La.1990).

In the case at bar, Defendant was driving a vehicle in which cocaine was in plain view on the driver's seat and found in a bottle on the driver's side floorboard. Defendant was the driver and sole occupant of the vehicle. Accordingly, as in *Wright*, Defendant is presumed to have dominion and control over the contents of his vehicle, including the cocaine which was within his reach when he was inside the vehicle.

Thus, the evidence, when viewed in the light most favorable to the prosecution, proves beyond a reasonable doubt that Defendant knowingly or intentionally possessed a gun while knowingly or intentionally possessing cocaine. Accordingly, this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NO. 3[1]

In his third assignment of error, Defendant contends the trial court erred when instructing the jury on the law concerning constructive possession.

---

[1] We will address this assignment of error out of order, as it pertains to an interpretation of *Blanchard*, 776 So.2d 1165, and other cases discussed in Assignment of Error No. 1.

At a conference regarding jury instructions, Defendant objected to the portion of the instructions regarding possession, as it did not include the phrase "at the time of arrest." Defendant sought to have the instructions state that a person was in possession of an object if the person had physical contact with the object "at the time of the arrest." The trial court denied Defendant's request, indicating the addition of the language would lead to absurd consequences.

Defendant contends the trial court's decision to exclude "at the time of arrest" in the jury instructions was erroneous and in direct contradiction of *Blanchard*, 776 So.2d 1165. In support of his argument, Defendant points out in *Blanchard* the supreme court cited the following from the case of *Commonwealth v. Montague*, 23 S.W.3d 629 (Ky. 2000).

> Similarly, the Supreme Court of Kentucky, in *Commonwealth v. Montaque*, 23 S.W.3d 629 (Ky.2000), recently decided that under their enhancement statute, Ky.Rev.Stat. Ann. § 218A.992(1),[12] for possession of a weapon at the time of the commission of a drug crime, there must be a nexus between the crime committed and the possession of a firearm, unless the defendant has actual possession of the firearm or constructive possession of a firearm within his immediate control when arrested:
>
> > While we decline to draw a bright-line rule to conclusively determine whether a nexus between the commission of the offense and the firearm possession has been established, we can make some general observations. First, whenever it is established that a defendant was in actual possession of a firearm when arrested or that a defendant had constructive possession of a firearm within his or her "immediate control when arrested," then, like under the federal sentencing guidelines, the Commonwealth should not have to prove any connection between the offense and the possession for the sentence enhancement to be applicable. However, the defendant should be allowed to introduce evidence to the contrary, which would create an issue of fact on the issue. Next, when it cannot be established that the defendant was in actual possession of a firearm or that a firearm was within his or her immediate control upon arrest, the Commonwealth must prove more than mere possession. It must prove some connection between the firearm possession and the crime.

*Id*. at 632-633. The court reasoned that "requiring proof of a nexus between the commission of the offense and the possession of the firearm reduces or eliminates [the risk that the statute could be used to punish non-criminal activity] without lessening the statute's legitimate penal purpose." *Id*. at 632.

_____

[12]The statute provides in pertinent part:

[A]ny person who was at the time of the commission of the offense in possession of a firearm, shall: (a) Be penalized one (1) class more severely than provided in the penalty provision pertaining to that offense if it is a felony; or (b) Be penalized as a Class D felon if the offense would otherwise be a misdemeanor.

*Id*. at 1172.

We note the "at the time of arrest" language used in *Commonwealth* was not adopted by our supreme court in its holding in *Blanchard*. As pointed out earlier, the supreme court set forth the following in its decision in *Blanchard*, 776 So.2d 1165:

. . . under La. R.S. 14:95(E), when it cannot be established that the defendant was using or in actual possession of a firearm or that a firearm was within his or her immediate control, the state must prove more that [sic] mere possession of the firearm. It must prove some connection between the firearm possession and the drug offense. This connection might be established by the following evidence: (1) the type of firearm involved; (2) the type of controlled dangerous substance involved; (3) the quantity of drugs involved; (4) the proximity of the firearm to the drugs; (5) whether the firearm is loaded; and (6) any other relevant evidence.

*Id*. at 1173.

Additionally, as noted earlier, the court in *Jarvis*, 811 So.2d 38, found the defendant was in possession of a gun and drugs prior to stepping out of his car when stopped by police. The same is true in the case at bar. Once Defendant stopped and exited his vehicle, Deputy Theunissen asked Defendant to approach her vehicle so she could speak to him. The gun and the drugs were in Defendant's immediate control prior to his exiting his vehicle. Therefore, the trial court did not err in failing to instruct the jury that Defendant had to possess the gun and the drugs "at the time of arrest" in order to convict the Defendant.

-11-

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Defendant contends the trial court erred in reversing a previous ruling granting his Motion to Suppress, based solely upon additional evidence that a witness (Henry Riley, III) called by Defendant lied about having a felony conviction within the last ten years.

A bill of information was filed on March 25, 2004 charging Defendant with possession of cocaine, and the case was assigned docket number CR-288-04. A Motion to Suppress was filed referencing that docket number on May 18, 2004. The bill of information was amended on July 8, 2004 to charge Defendant with possession of cocaine with intent to distribute. On that same date, a hearing on a Motion to Suppress was held, at which time the court granted the motion. On July 8, 2004, Defendant was charged with illegal carrying of weapons, and that matter was assigned docket number CR-578-04.

Defendant proceeded to trial on both docket numbers on March 15, 2005. On March 16, 2005, the charge of possession of cocaine with intent to distribute was dismissed by the State. After Defendant was convicted of illegal carrying of weapons, Notices of Appeal were filed in both docket numbers.

Two appeals were lodged with this court on March 31, 2006, one bearing docket number KA06-473 and the other bearing docket number KA06-474. This court issued a rule to show cause why the appeal in docket number KA06-473 should not be dismissed as moot, as the appeal pertained to the dismissed charge of possession of cocaine with intent to distribute. Counsel for Defendant failed to respond and the appeal in docket number KA06-473 was dismissed on May 17, 2006.

Therefore, the issue in this assignment of error is not properly before the court. The Motion to Suppress was filed in docket number CR-288-04 and not docket

number CR-578-04, which is the docket number presently before this court on appeal.

## ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, Defendant contends the trial judge and his counsel erred in relying on the third circuit case of *State v. Dabney*, 01-1110 (La.App. 3 Cir. 2/27/02), 809 So.2d 1196, *writ granted*, 02-934 (La. 11/22/02), 829 So.2d 1034, *decision reversed and remanded*, 02-934 (La. 4/9/03), 842 So.2d 326, *on remand*, 01-1110 (La.App. 3 Cir. 6/25/03), 848 So.2d 784, as supporting their failure to include attempted illegal carrying of weapons in the jury charge.

At trial, defense counsel, who is also appellate counsel, informed the court he objected to the inclusion of the lesser included offense of attempted illegal carrying of weapons in the jury instructions. Defendant was also questioned and indicated he had discussed the matter with counsel and agreed with counsel's decision. Accordingly, the court excluded any reference to attempted illegal carrying of weapons from its jury instructions. *See State v. Morris*, 05-290 (La.App. 5 Cir. 11/29/05), 917 So.2d 633. As Defendant moved to have the lesser included offense excluded from the jury instructions, he may not complain of the error. La.Code Crim.P. art. 841(A).

## ASSIGNMENT OF ERROR NO. 5

In this assignment of error, Defendant contends his right to a trial by a jury of his peers was denied since the jury consisted of eleven whites and one African American.

During a discussion regarding the selection of alternate jurors, the following exchange occurred:

> THE COURT:     All right. We'll select two (2). Each side will have two (2) -- two (2) challenges -- excuse me, each side will have one (1) challenge -- one (1) peremptory.

>          . . . .
>
>        THE COURT:      -- left over are gone, and you've got one (1) each I'm giving you to exercise for the two (2) alternate jurors that would be selected, --
>
>          . . . .
>
>        THE COURT:      But I'm going to let you use your backstrikes, I mean, if you still --
>
>        MR. MCCORVEY:      No.  No, Your Honor, I'm good with everyone.
>
>        THE COURT:      Okay.
>        All right.   And then -- and then finally then do we have any challenges -- any Batson-type challenges in the use of any peremptory challenges by either the State of the defense?
>
>        MR MCCORVEY:      No, I don't.
>
>        MR. LAPOINT:   No.
>
>        THE COURT:      Okay.
>        All right.  So we're going to swear our twelfth juror in and then select the two (2) alternates.

The Defendant failed to make any objection regarding the make up of the jury in this case.  Therefore, any alleged *Batson* violation was waived.  La.Code Crim.P. art. 841(A) and *State v. President*, 97-1593 (La.App. 3 Cir. 7/15/98), 715 So.2d 745, *writ denied*, 98-2115 (La. 12/11/98), 729 So.2d 590.

<u>                         </u>**ASSIGNMENT OF ERROR NO. 6**

In this assignment of error, Defendant contends the trial judge erred in sentencing him to seven years at hard labor.

>        In *State v. Cook*, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996), the supreme court held that when a defendant claims a sentence is excessive "[t]he only relevant question on review . . . [is] 'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'  *State v. Humphrey*, 445 So.2d 1155, 1165 (La.1984)."

*State v. Robinson*, 05-633, p. 8 (La.App. 3 Cir. 12/30/05), 918 So.2d 1151, 1156.

The Defendant was convicted of illegal carrying of weapons. A person convicted under La.R.S. 14:95(E) "shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence." The Defendant received a sentence of seven years.

The Defendant contends his sentence is excessive, as he was thirty-five years old, paying child support for three children, and was a high school graduate who had attended two colleges on a basketball scholarship. Additionally, his criminal record consisted of an outstanding warrant for dog fighting in Mississippi, he possessed only .07 grams of cocaine at the time of his arrest for the current offense, and the gun found inside his vehicle was unloaded. The Defendant further contends he is the victim of the legislature's failure to assign a sentence under La.R.S. 14:95 that "reasonably punishes an offender who is found in possession of very small quantities of contraband while in lawful possession of a firearm; in the absence of a drug transaction; where the firearm is unloaded, and where the firearm is constructively possessed."

We find Defendant's sentence is not excessive. His behavior preceding the arrest, the other evidence, which included a large amount of cash and a syringe, were also considered by the trial court. Further, the sentence was only two years more than the minimum sentence, Defendant received no fine, and the trial court thoroughly reviewed the Defendant's background before imposing the sentence. Additionally, the trial court's original intent was to sentence the Defendant to eight years.

**DECREE**

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 06-474

STATE OF LOUISIANA

VERSUS

JOHN THOMPSON, III

**COOKS, J.  dissents in part.**

Although Defendant's sentence was within the statutory range provided for the crime he was convicted of committing, the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S.Ct. 2531 (2004) made clear the Due Process Clause requires that the "maximum sentence" the judge actually imposed must be based on the facts presented to the jury or admitted by the defendant.  The Court explained the "statutory maximum" and the maximum sentence which may be imposed based on the admitted or proven facts for *Apprendi* purposes are not the same.  *See Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348 (2000).  A sentence, though falling within the statutory maximum range, may violate the Constitution if the defendant received a greater sentence based on "facts" which were not submitted to the jury or admitted by him.  In *Blakely*, the Supreme Court specifically held, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. . .  In other words, the relevant *"statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.*"  *Id.*, 542 U.S. at 303-04 (emphasis added).  It is constitutionally impermissible for a judge to impose an "excessive" sentence even if that sentence falls within the statutory range.  In determining whether a sentence is excessive, an appellate court often examines the

aggravating and mitigating factors considered by the trial judge. "We have previously held that factors such as the particular circumstances surrounding the commission of the crime, the offender's personal history, prior criminal record, and the likelihood of recidivism or rehabilitation should be considered." *State v. Taves*, 02-709, p. 7 (La.App. 3 Cir. 1/15/03), 846 So.2d 1, 10. When the sentence imposed is grossly disproportionate to the degree of culpability, severity of the crime and the damage to society, it makes no measurable contribution to acceptable penal goals and offends our sense of justice. *State v. Schmidt*, 99-1412 (La.App. 3 Cir. 7/26/00), 771 So.2d 131. Moreover, "a sentencing judge does not possess unbridled discretion to impose a sentence within statutory limits, regardless of mitigating factors." *State v. Sepulvado*, 367 So.2d 762, 769-70 (La. 1979). *Apprendi* also instructs it is constitutionally impermissible for a judge to impose a greater or increased sentence other than the "maximum" he would impose in like cases based on "aggravating facts" not submitted to the jury, admitted by defendant or supported by prior convictions.

Defendant was thirty-five years old at the time of sentencing, a first felony offender and had no prior criminal history other than an outstanding warrant for dog fighting. He was convicted of violating La.R.S. 14:95(E) by illegally carrying an unloaded weapon while constructively "possessing" a controlled dangerous substance. Although this statute also includes within its prohibition the "sale and distribution" of a controlled dangerous substance, the evidence presented to the jury *only proved* Defendant "possessed" a very "small amount of drugs on his person" and no evidence was presented to the jury which proved Defendant had a history of dealing drugs. In fact, no evidence exists in the record at all to prove Defendant was a drug dealer at any time. The only evidence the trial judge used to conclude Defendant was engaged in the "sale or distribution" of drugs was that he had

$1,400.00 in cash and a syringe in his possession at the time of arrest. His decision to impose a seven year sentence without benefit of probation, parole or suspension of sentence for the crime Defendant committed was clearly based on his conclusion that the more "aggravated" circumstances or elements – sale and distribution – existed in this case. The majority's reference to Defendant's conduct prior to arrest also imputes alleged criminal conduct, i.e., aggravated assault, in the sentencing process which was not decided by the jury or admitted by Defendant. I am satisfied an *Apprendi* due process infringement occurred in the sentencing phase of this case.

I also respectfully dissent from the majority's decision to affirm Defendant's sentence because he received the same or a more severe penalty than more egregious offenders.

In *State v. Phillips*, 04-827 (La.App. 3 Cir. 11/10/04), 887 So.2d 670, the defendant was sentenced to five years for illegal carrying of weapons and also pled guilty to possession of cocaine and obstruction of justice. This court found the defendant's sentence was not excessive and noted that the trial court found the defendant had a criminal history of crimes against the person, drug offenses, and a long juvenile record.

In *State v. Dabney*, 01-1110 (La.App. 3 Cir. 6/25/03), 848 So.2d 784, the defendant was sentenced to seven years for illegal carrying of weapons and ten years for possession of a firearm by a convicted felon. The court noted the defendant was a second felony offender who was on probation at the time of the offenses and held his sentence was not excessive.

A sentence more than the minimum is excessive in this case considering the record on appeal.[1]

---

[1] Even the minimum is bordering on excessiveness considering the particular admissible and proven facts.