**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**22-345**

**STATE OF LOUISIANA**

**VERSUS**

**EZRA J. COUTEE, II**

**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2019-408
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

**********

**VAN H. KYZAR**
**JUDGE**

**********

Court composed of Van H. Kyzar, Jonathan W. Perry, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

Chad M. Ikerd
Louisiana Appellate Project
P. O. Box 2125
Lafayette, LA 70502
(337) 366-8994
COUNSEL FOR DEFENDANT/APPELLANT:
    Ezra J. Coutee, II

James R. Lestage
District Attorney
Richard A. Morton
Assistant District Attorney
Thirty-Sixth Judicial District
P. O. Box 99
DeRidder, LA 70634
(337) 463-5578
COUNSEL FOR APPELLEE:
    State of Louisiana

**KYZAR, Judge.**

Defendant appeals his convictions for first degree rape and unauthorized entry of an inhabited dwelling, and his sentence of life in prison without the possibility of parole, probation, or suspension of sentence as to the first degree rape conviction. For the reasons herein, we affirm the convictions and the sentences imposed.

## FACTS AND PROCEDURAL HISTORY

On July 18, 2019, Defendant, Ezra J. Coutee, II, was charged by bill of information with one count of first degree rape of J.R.,[1] in violation of La.R.S. 14:42, and one count of home invasion, in violation of La.R.S. 14:62.8. Subsequently, a bill of indictment was returned by the grand jury on January 15, 2020, again charging Defendant with first degree rape and home invasion.[2] On February 4, 2020, Defendant pled not guilty to the charges.

Trial on this matter began January 31, 2022. The evidence presented at trial showed that on April 20, 2019, the victim, J.R., who lived alone at the time, awakened in her bed at her home in DeRidder, Louisiana, to encounter a man on top of her. He threatened her, and then proceeded to rape her. While she later reported that the perpetrator "attempted" to rape her, she did also tell authorities investigating the crime that he did actually penetrate her vaginally though not fully, as he was having difficulty getting or maintaining an erection. The perpetrator got

---

[1] Pursuant to La.R.S. 46:1844(W), the victim's initials are used to protect her identity.

[2] On count one, the bill of indictment charged Defendant under alternative provisions of La.R.S. 14:42. The first alternative alleged Defendant violated La.R.S. 14:42(A), which defines first degree rape as "a rape committed upon a person sixty-five years of age or older[.]" The second alternative alleged Defendant violated La.R.S. 14:42(A)(2), which defines first degree rape as a rape committed without the victim's consent because she was "prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution." Prior to trial, there was a stipulation that the victim was over the age of sixty-five at the time of the offense. Therefore, the second alternative was not read to the jury as the only question was whether there was nonconsensual sexual intercourse.

J.R. out of bed and took her to different parts of the house, but she eventually managed to distract him and escape to a neighbor's home, where she called 911. The perpetrator ran out of the house hastily as J.R. escaped. Deputy Douglas Cooley of the Beauregard Parish Sheriff's Office (BPSO) was the first to arrive. He initially questioned J.R., before proceeding to J.R.'s home where the offense occurred to process the scene.

Deputy Cooley and Detective Travis Thomson, also with BPSO, recovered several items from the victim's home that were left behind by the perpetrator, including a pair of eyeglasses and a jacket that had a lighter, a pair of gloves, and a rolled cigarette in the pockets. They also recovered a pair of men's boots. Detective Thompson then recovered a screwdriver from a trail behind the home, which J.R. reported the perpetrator used to threaten her. J.R. was taken to be examined by a Sexual Assault Nurse Examiner (SANE), Elizabeth Broussard, who collected rape kit evidence including vaginal swabs for DNA testing. Those swabs were later transported to the Southwest Louisiana Crime Laboratory (SWLCL) for further DNA analysis.

Monica Quall, accepted as an expert in DNA Serology Analysis and employed with SWLCL, testified that she extracted a single subject DNA sample from the eyeglasses and the cigarette. That DNA profile was given to BPSO. Detective Thompson ran a CODIS DNA database search on the profile, which showed a match to Defendant's DNA profile, present in the database because of prior criminal activity. Detective Thompson then participated in the arrest of Defendant, who was in Lafayette at the time, and after the arrest, Detective Thompson secured a search warrant to secure a DNA sample from Defendant through an oral swab. He also took pictures of tattoos on Defendant's chest and legs, as J.R. had reported seeing tattoos on these areas of her attacker. Defendant

2

in fact had tattoos in those areas. The sample DNA profile was sent to the crime labs for comparison purposes.

Ms. Quall also testified that she extracted two male DNA samples from the vaginal swabs found in the rape kit evidence but was unable to test them because of the sample size. She transported that sample to the Northwest Louisiana Crime Lab (NWLCL) in Shreveport, which has the capability to perform specific testing, YSTR, of the labia minora and labia majora samples, as SWLCL no longer did YSTR testing. This testing focuses specifically on male DNA profiles. Michelle Jackson, DNA Section Supervisor with NWLCL since 2013 and accepted by the court as an Expert in Forensic DNA Analysis, testified that DNA "obtained from the extract labia minora from [J.R.] was consistent with the YSTR haplotype contained from the extract from the reference from [Defendant]."

Defendant testified on his own behalf. He denied raping J.R., stating that he had been engaged in a long-term sexual relationship with her, having met her through her son. He claimed to be a Sergeant with the Arian Brotherhood of Texas, and had given the son methamphetamines to sell, but the son purportedly did not pay him what was owed for the drugs. He claimed he went to the home of J.R. on the day in question to kill the son, and also J.R. as "collateral damage." He claims that J.R. let him into the home. The son was not present, and he and J.R. then attempted to have sexual relations but were unable to do so because of his erectile dysfunction issues. Defendant testified he had a change of heart as to harming J.R. and told her of his plan, making her angry. He claimed to have left the home after she began screaming and acting hysterically.

On February 3, 2022, Defendant was unanimously found guilty by the twelve-person jury of one count of first-degree rape and one count of unauthorized entry of an inhabited dwelling, in violation of La.R.S. 14:62.3, a responsive verdict

3

to the original home invasion charge. Following the denial of a motion for a new trial on February 10, 2022, Defendant waived the twenty-four hour sentencing delay, agreeing to be sentenced immediately, and was sentenced to life in prison without the possibility of, parole, probation, or suspension for the first-degree rape. He was also sentenced to six years at hard labor on the unauthorized entry charge. The trial court further found Defendant guilty of contempt of court for an off-the-record outburst and use of profanity during a pretrial hearing. The court ultimately sentenced Defendant to thirty days in parish jail for the contempt charge. The court ran all three sentences concurrent to one another.

This appeal followed, wherein Defendant asserts three assignments of error.

I.   The State failed to sufficiently prove that Ezra Coutee was guilty of first-degree rape and unauthorized entry of an inhabited dwelling.

II.  If the evidence was sufficient to prove a non-consensual encounter, at best, the evidence supported a lesser included offense of attempted first-degree rape.

III. The trial court erred in failing to determine whether a mandatory life sentence for first-degree rape was constitutional in this case.

## DISCUSSION OF ASSIGNED ERRORS

### *Sufficiency of the Evidence*

Defendant asserts in his initial assignment of error that the evidence is insufficient to support the guilty verdicts for first degree rape and for the unauthorized entry of an inhabited dwelling. We disagree.

When determining claims of insufficiency of the evidence to sustain a conviction, an appellate court must review the record in the light most favorable to the prosecution and be convinced that a rational factfinder could readily have found the defendant guilty beyond a reasonable doubt of the offense. *Jackson v.*

4

*Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). The *Jackson* standard applies to our review in the instant case and is well settled.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Weary*, 2003-3067 p. 17 (La.4/24/06), 931 So.2d 297, 310, *pet. for cert. filed September 20, 2006 (No. 06-6799)*; *State v. Captville*, 448 So.2d 676, 678 (La.1984). The fact-finder weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Dabney*, 2002-934 p. 1 (La.4/9/03), 842 So.2d 326, 327; *State ex rel. Graffagnino v. King*, 436 So.2d 559, 563 (La.1983) ("It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the *Jackson* standard of review.").

*State v. Ordodi*, 06-207, p. 10 (La. 11/29/06), 946 So.2d 654, 660.

Defendant was convicted of first degree rape in violation of La.R.S. 14:42(A), which provides in pertinent part that "[f]irst degree rape is a rape committed upon a person sixty-five years of age or older[.]" Rape is defined as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La.R.S. 14:41(A). Further, "[e]mission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." La.R.S. 14:41(B).

Unauthorized entry of an inhabited dwelling is "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." La.R.S. 14:62.3(A). An unauthorized entry is an entry without the express or implied consent given by a person with the authority and capacity to consent. *State v. Ortiz*, 96-1609 (La. 10/21/97), 701 So.2d 922, *cert. denied*, 524

5

U.S. 943, 118 S.Ct. 2352 (1998). "In the case of a private residence, a person must have the consent of the occupant or an occupant's agent to constitute a defense to unauthorized entry." *State v. Butler*, 06-645, p. 5 (La.App. 5 Cir. 12/27/06), 948 So.2d 296, 299.

We find the evidence presented here more than sufficient, when viewed in the light most favorable to the prosecution, to prove all elements of each of the offenses beyond a reasonable doubt. J.R., who the parties stipulated was 70 years of age at the time of the crime, described the events of the attack in great detail, testifying that she woke up in her bed with Defendant on top of her.

> I was awakened -- it was just a soft type touch somewhere -- at those times you can think back and you can know but you don't know where. I was touched on my body and the person said, "don't move". Apparently, I flinched or something and at that point they said, "don't move or I'll kill you", and I knew then that I was in danger.

While she described the ensuing event in some testimony as his attempt to rape her, J.R. clearly states numerous times that Defendant did in fact penetrate her vaginally, at least slightly.

> Well, he - at that point it was -- he got on the bed and he moved my leg and he tried to, you know, rape me. And he failed, and then he kind of pulled himself back and he got ahold of his penis to try to, I guess make the hardness come. And then he penetrated, didn't penetrate very far because he never could, you know, he couldn't get it in there. But he did try with his hand and then he just quit and he got up and he wanted 1.7 million dollars.

Defendant testified at trial that he and J.R. had been engaged in an ongoing sexual relationship for the four and a half years prior to the date of the offense. He argues that the evidence presented did not disprove this encounter as consensual intercourse, and he testified that J.R. let him into her home on the morning in question. J.R., however, adamantly refuted that she and Defendant had any type of relationship prior to the rape and in fact stated that the last time he had been in her home, to see her son, was one and a half years prior to the attack. Even then, she

6

only knew his name as Izzy, and did not approve of him being in her home, because of comments he made to her that day.

Defendant also testified that he could not actually engage in intercourse that day, because of erectile dysfunction issues. That testimony is at odds with the testimony of SANE Nurse Elizabeth Broussard, who testified that she examined J.R. and found that she had a tear in her labia majora, which is the outer area of her vaginal region, as well as redness inside the urethral meatus, inside the genital structure, and even further inside the labia minora. She testified that these findings were consistent with blunt force trauma. Defendant's testimony is also at odds with the testimony of Michelle Jackson, DNA Section Supervisor of NWLCL in Shreveport, who stated that the DNA "obtained from the extract labia minora from [J.R.] was consistent with the YSTR haplotype contained from the extract from the reference from Ezra Coutee."

The jury found the testimony of J.R. and the other witnesses presented by the State to be more credible. While there was much evidence to support the testimony of J.R., it is clear under our law that the testimony of a sexual assault victim alone can be sufficient to support a guilty verdict. *State in Interest of E.S.*, 18-1763 (La.10/22/19), 285 So.3d 1046. It is obvious the jury gave little if any credibility to the testimony of Defendant. That is understandable, in light of his admission at trial that he lied to the investigating deputies, and that he had committed numerous felony crimes in the past, including murder. It is for the trier of fact to make credibility determinations, not this court, and the trier of fact may, within the bounds of rationality, accept or reject the testimony of any witness. *State v. Mussall*, 523 So.2d 1305 (La.1988). Accordingly, we affirm the convictions of Defendant for first degree rape and unauthorized entry of an inhabited dwelling.

7

*Attempted First Degree Rape versus a Completed Offense*

Defendant's second assignment of error claims the evidence only supported a lesser included offense of attempted first degree rape rather than the completed offense, as there was insufficient evidence of the element of penetration. We have already determined that the evidence presented was sufficient to support the jury's finding of guilt as to the charge of first degree rape. As such, Defendant's second assignment of error is rendered moot.

*Excessive Sentence*

Defendant finally asserts that his sentence of life in prison on his conviction of first degree rape is constitutionally excessive. Pursuant to La.R.S. 14:42(D)(1), the penalty for first degree rape in this instance is statutorily mandated: "Whoever commits the crime of first degree rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." The mandatory life sentence for aggravated rape, now first degree rape, is a valid constitutional exercise of the state legislature's right and authority to determine the length of sentence for felony crimes. *State v. Prestridge*, 399 So.2d 564 (La.1981); *State v. Farria*, 412 So.2d 577 (La.1982); and *State v. Talbert*, 416 So.2d 97 (La.1982).

We note that Defendant failed to object to the sentence orally in court and did not timely file a motion to reconsider sentence. Therefore, his claim for excessiveness of sentence is barred per La.Code Crim.P. art. 881.1(E). *State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356.

In *State v. Thomas*, 50,898, p. 22 (La.App. 2 Cir. 11/16/16), 209 So.3d 234, pp. 247-48 the second circuit reviewed a similar claim that the trial court erred in its failure to consider a downward departure from the mandatory life sentence for first degree rape, then referred to as aggravated rape.

8

[T]he downward departure from a mandatory minimum sentence may occur in rare circumstances if a defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. . . . The "rare circumstances" in which a mandated sentence can be altered are even less likely in the case of a life sentence chosen by the legislature for a single crime, such as aggravated rape or second degree murder. *State v. Chandler*, [41,063 (La. App. 2d Cir. 9/08/06), 939 So.2d 574, *writ denied*, 06-2554 (La. 5/11/07), 955 So.2d 1277]. In such crimes, unlike the mandatory minimum sentence under the habitual offender law, the "tailoring" of the sentence by the legislature was for life because the culpability of offenders and the gravity of the offense are so great. *Id.*

Defendant had the burden of showing the trial court through evidence that he is entitled to a downward departure from the mandatory life sentence, but he failed to present any evidence showing that he is exceptional or that his sentence was not meaningfully tailored to the offense. He did not argue for a downward departure prior to sentencing, nor did he file a motion to reconsider the sentence thereafter. In any event, considering the evidence of the heinousness of this crime, its effect on J.R.'s life, and Defendant's criminal history, we find no downward departure from the mandatory sentence to be warranted. As clearly stated by our supreme court in *State v. Foley*, 456 So.2d 979, 983 (La.1984), "[a]ggravated rape [now referred to as first degree rape] inflicts mental and psychological damage to its victim and undermines the community sense of security[]" and "deserves a harsh penalty; it is one of the most violent felonies a person can commit." Defendant's allegation of error as to this sentence is without merit.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record in its entirety, we find errors in the minutes of the jury verdict, the minutes of sentencing, and the Uniform Commitment Order that need correcting.

9

According to the transcript and the written verdict as to count two, Defendant was found guilty of the responsive verdict of unauthorized entry of an inhabited dwelling. The minutes of the jury's verdict, however, indicate the jury returned a verdict of "Guilty of Home Invasion of Inhabited Dwelling." Likewise, the minutes of sentencing indicate the verdict for count two was "Home Invasion of an Inhabited Dwelling."[3] Finally, the Uniform Commitment Order indicates the verdict for count two was "Home Invasion." It is well-settled that the transcript prevails when it conflicts with the minutes. *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, the trial court is instructed to amend the minutes of the jury's verdict, the minutes of sentencing, and the Uniform Commitment Order to correctly reflect that the jury's verdict as to count two was "Guilty of Unauthorized entry of an inhabited dwelling."

Additionally, we find that the Uniform Commitment Order needs correction as to count one as well. According to the transcript and the minutes of sentencing, the trial court sentenced Defendant on count one (first degree rape) to life at hard labor, without benefit of parole, probation, or suspension of sentence. The Uniform Commitment Order, however, indicates the sentence imposed for first degree rape was 999 years. In *State v. Bringier*, 21-476, p. 2 n.1 (La.App. 1 Cir. 12/30/21), 340 So.3d 975, 977, *writ denied*, 22-157 (La. 4/5/22), 335 So.3d 837, the first circuit noted this identical issue in a footnote:

> The commitment order reflects a sentence of 999 years. The sentencing minutes and sentencing transcript, however, reflect a sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The sentencing transcript prevails in the event of a discrepancy in the record

---

[3] According to the transcript of sentencing, the trial court correctly referred to the verdict for count two as "unauthorized entry of an inhabited dwelling."

10

concerning the sentence. *See State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

Accordingly, the trial court is instructed to amend the Uniform Commitment Order to reflect the life sentence imposed, without benefit of parole, probation, or suspension of sentence.

## DECREE

For the reasons herein, the convictions of Defendant, Ezra Coutee, II, for first degree rape, in violation of La.R.S. 14:42(A), and unauthorized entry of an inhabited dwelling, in violation of La.R.S. 14:62.3, are affirmed. The sentences of life in prison without parole, probation, or suspension of sentence for the offense of first degree rape and the sentence of six years at hard labor for the offense of unauthorized entry of an inhabited dwelling, with the sentences to run concurrently with each other, are also affirmed. The trial court is instructed to amend the minutes of the jury's verdict, the minutes of sentencing, and the Uniform Commitment Order to correctly reflect the jury verdict as to count two. The trial court is also instructed to amend the Uniform Commitment Order to reflect the life sentence imposed for the conviction of first degree rape, without benefit of parole, probation, or suspension of sentence.

**AFFIRMED.**

11